COMMONWEALTH vs. MICHAEL THURBER.

Middlesex. December 1, 1980. — April 8, 1981.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.

*Escape. Necessity. Practice, Criminal,* Burden of proof, Failure to make
objection, Instructions to jury. *Evidence,* Admissions and confessions.

At the trial of a defendant charged with escape from a correctional insti-
tution, the judge adequately explained to the jury the doctrine of
necessity as a justification for escape. [330-331]
At the trial of a defendant charged with escape from a correctional insti-
tution, the judge's instructions as to the Commonwealth's burden of
disproving necessity, although less clear than they should have been,
did not prejudice the defendant. [331-332]
At the trial of a defendant charged with escape from a correctional insti-
tution, the judge did not abuse his discretion in his use of hypothetical
examples to explain the extent to which an escape may be justified by
necessity. [332-333]
A judge's charge with respect to the meaning of proof beyond a reasonable
doubt was adequate even though it included a statement equating
reasonable doubt with "a doubt for which a reason can be given."
[333]
Where a defendant was asked on cross-examination what he had told a
police officer when he was arrested and, without objecting to the ques-
tions, testified as to statements he had purportedly made, it was open
to the Commonwealth to impeach him by testimony that he had re-
mained silent upon his arrest. [333-335]

INDICTMENT found and returned in the Superior Court on
July 8, 1977.

The case was tried before *Ronan,* J.

After review was sought in the Appeals Court, the
Supreme Judicial Court ordered direct appellate review on
its own initiative.

*Richard A. Cutter* for the defendant.

*Michael J. McHugh,* Assistant District Attorney, for the
Commonwealth.

BRAUCHER, J.   Late in 1977 the defendant was convicted of escape from the Massachusetts Correctional Institution at Concord.  G. L. c. 268, § 16.  A single justice of this court allowed a motion for the late filing of an appeal, and the defendant appealed to the Appeals Court.  We transferred the case to this court on our own motion to consider novel questions with respect to the doctrine of necessity.  We affirm the conviction.

The Commonwealth presented evidence that on June 24, 1977, the defendant was in lawful custody at Concord, serving a life sentence for murder in the second degree, that he left the institution without permission and was arrested by a Concord police officer about an hour later about one-half mile away, and that he had in his possession a screw driver, pliers and papers containing a handwritten escape plan. The prison authorities were not then aware of his flight.

The defendant presented evidence that he escaped because his life was in imminent danger.  He testified that early in June he informed the superintendent of the beating of an inmate by a guard, and that thereafter he was harassed and threatened by guards and inmate cliques.  He had been planning an escape for about three weeks before June 24, and his plans for escape did not include returning to custody.  On June 23 he learned that an attempt would be made on his life the next day, and on the morning of June 24 he was playing basketball with friends when they were approached by a large group from a clique allied to the guards.  A fight broke out between one of his friends and one of the new group, and some of that group pulled out homemade knives.  No guards were present.  The defendant and two others fled, climbed over a damaged part of the wall, went through a barbed wire fence, and ran into the woods outside the institution.

The defendant's account was corroborated in some respects by the testimony of other inmates, and was contradicted in some respects by the testimony of guards and officials at the institution.

1. *The doctrine of necessity.* We have long recognized that compulsion may negate criminal purpose. *Commonwealth* v. *Elwell,* 2 Met. 190, 192 (1840). Recently we considered the effect of duress. *Commonwealth* v. *Robinson,* 382 Mass. 189, 198-206 (1981). But we seem not to have faced the problem of necessity in the context of prison escapes. Necessity for escape has been asserted with varying success in other jurisdictions. *United States* v. *Bailey,* 444 U.S. 394 (1980) (insufficient evidence of necessity). *People* v. *Lovercamp,* 43 Cal. App. 3d 823 (1974) (new trial on necessity). *People* v. *Unger,* 66 Ill. 2d 333 (1977) (same). *State* v. *Reese,* 272 N.W.2d 863 (Iowa 1978) (insufficient evidence of necessity). Necessity is similar to duress, and differences have sometimes been blurred. See Note, Escape from Cruel and Unusual Punishment: A Theory of Constitutional Necessity, 59 B.U.L. Rev. 334, 338 (1979). But see *People* v. *Condley,* 69 Cal. App. 3d 999, 1011-1013, cert. denied, 434 U.S. 988 (1977). The Model Penal Code defines duress in terms of coercion by irresistible force or threats of force, and necessity in terms of a balancing of harms where the criminal conduct represents the better choice. §§ 2.09 (duress), 3.02 (choice of evils) (Proposed Official Draft 1962).

The doctrine was limited in *People* v. *Lovercamp,* 43 Cal. App. 3d 823, 831-832 (1974), to the following circumstances: "(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future; (2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory; (3) There is no time or opportunity to resort to the courts; (4) There is no evidence of force or violence used towards prison personnel or other 'innocent' persons in the escape; and (5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat." Assuming that we would apply the doctrine as a justification for escape in a proper case, we think such circumstances should at least be taken into account. The

judge's charge to the jury, derived from the *Lovercamp* case, adequately explained the doctrine to the jury.

2. *Burden of proof.* A judge need not charge the jury on a hypothesis not supported by evidence. The question of necessity is fairly raised only if there is evidence that would warrant a reasonable doubt whether the escape was justified by necessity. Cf. *Commonwealth* v. *Walden,* 380 Mass. 724, 726-727 (1980) (provocation for homicide). Once the question is fairly raised, the teaching of our cases on matters of justification, mitigation and excuse is that the burden is on the Commonwealth to prove absence of justification beyond a reasonable doubt. See *Commonwealth* v. *Robinson,* 382 Mass. 189, 203-206 (1981), and cases cited.

In the present case, the defendant's evidence was sufficient, if believed, to warrant a reasonable doubt as to necessity. There was no evidence that he reported to the proper authorities, and it was proper for the judge to leave to the jury the question whether he had attained a position of safety before his recapture. But the defendant contends that the judge failed to make it clear that the Commonwealth bore the burden of proving beyond a reasonable doubt that there was no necessity.

The judge explained carefully that the Commonwealth had the burden of proving its case beyond a reasonable doubt, but he then referred to the "affirmative defense" of necessity. After defining necessity, he restated the Commonwealth's burden of proof, but his language could be read to differentiate between the Commonwealth's case and an affirmative defense which "comes usually from the defendant." When the jury requested further instructions on necessity, he used the phrases "if you find" and "you must find" that we have criticized as tending to shift the burden of proof. See *Connolly* v. *Commonwealth,* 377 Mass. 527, 532-536 (1979). In summary, the instructions on burden of proof were less clear than they should have been, although the judge stated in a bench conference that he thought the jurors understood that the burden was on the Commonwealth.

Nevertheless, we think that the jury must have understood correctly the Commonwealth's burden. Justification by necessity was in substance the only contested issue and the only issue the jury were called upon to decide. Both counsel and the judge were thoroughly aware of the problem of burden of proof, and both defense counsel and the prosecutrix emphasized in their final arguments that the Commonwealth had the burden of disproving necessity. The Commonwealth's case, as a practical matter, consisted entirely of disproof of necessity, since the facts of the escape were conceded. Finally, defense counsel made no objection to the instructions on burden of proof.

3. *Examples of necessity.* The judge instructed the jury that necessity means that the defendant must report to the proper authorities as soon as he is in a position of safety. The defendant requested the judge to add that it was "for the jury to decide when, and if at all, the cause of the necessity had terminated," and the judge declined. After two hours of deliberation the jury requested further explanation of the law of necessity. The judge then reviewed the elements of necessity, emphasizing several times the question whether the defendant had a viable alternative to escape. If the defendant went over the wall by means of a ladder and pulled the ladder up behind him, the judge said, "as soon as he was in a position of safety in the hypothetical, probably when he pulled the ladder up, then there is no further necessity, then there is no further justification for that course of conduct." Later the judge said, "When you get outside assume you find that he was safe, and you found that he traveled away from that prison, we'll say, 20 feet, and along came somebody and stopped him. Those 20 feet, he had a viable alternative, and the doctrine of necessity does not apply."

The defendant argues that these instructions limited the doctrine of necessity too narrowly, and took away from the jury the question whether his conduct was reasonable. But the judge several times said that it was for the jury to determine the facts. We think he adequately stated the principle

that action is justified by necessity only so far as the necessity requires it. The extent to which a judge will use hypothetical examples and discuss particular possible factual issues must be left largely to his discretion. See *Commonwealth* v. *Simmons, ante* 40, 44 (1981). There was no abuse of discretion.

4. *Reasonable doubt.* The defendant argues that the judge failed to give adequate instructions on the presumption of innocence and the meaning of proof beyond a reasonable doubt. But the judge instructed the jury that the defendant was presumed to be innocent, that he was entitled to be tried upon the evidence, and that the burden of proof was on the Commonwealth to persuade the jury that the defendant was guilty beyond a reasonable doubt. The Commonwealth, he said, must produce credible, believable evidence that "satisfies" the jury and leaves them with "a firm and settled conviction" of the defendant's guilt. "Proof beyond a reasonable doubt is proof to a moral certainty." We think the charge was adequate. It is not fatal that the judge also equated reasonable doubt with "a doubt for which a good reason can be given." See *Commonwealth* v. *Robinson*, 382 Mass. 189, 197-198 (1981).

5. *The defendant's silence.* The prosecutrix sought to show that after the defendant was recaptured and given Miranda warnings, he made no statement that he had escaped from the Concord institution, and she argued in summation that the jury could infer that there was no necessity. The defendant argues that this use of his silence after arrest was improper, citing *Commonwealth* v. *Cobb*, 374 Mass. 514, 520-521 (1978). The difficulty is that the point has not been properly preserved.

As part of the prosecution's case, the arresting officer was asked whether the defendant made any statement after Miranda warnings were given. The defendant objected, but withdrew the objection when the officer answered, "No." On cross-examination of the defendant, the prosecutrix asked him whether he ever told the Concord police, when they recaptured him, that he was a Concord escapee.

Without objection he answered, "Yes, I did." The defendant's objection was sustained to the next question, "Did you ever tell them why you escaped?" Later, again without objection, he testified, "I told them we were from Concord. They said, 'From the farm?' I said, 'No. We went over the wall,' or the fence." He also testified without objection that he told the judge in the Concord District Court the reason that he escaped. The prosecutrix recalled the arresting officer as a rebuttal witness, and again asked whether the defendant had told him the defendant was an inmate from Concord. The defendant's objection was sustained, but the officer had already answered, "No." The judge then ruled that the evidence was admissible to contradict the defendant's testimony, and instructed the jury, at the defendant's request, that a person in custody has a constitutional right to say nothing, and that his silence cannot be used by the jury to make any inference adverse to him. The officer's testimony was then repeated. The prosecutrix, in summing up to the jury, referred to the officer's testimony that the defendant "never said he was an inmate from Concord" in a context suggesting that the defendant was never attacked at all. There was no objection.

We do not accept the Commonwealth's contention that, once the issue of necessity was fairly raised, evidence of the defendant's silence on recapture became admissible. Nor do we think that improper cross-examination of the defendant opens the door to use of such evidence by way of impeachment. See *Commonwealth* v. *Cobb*, 374 Mass. 514, 520-521 (1978). But a defendant who seeks reversal of a conviction by reason of an error in admitting evidence must make his objection known at trial. Once the defendant's testimony was in the case without objection, we think it was open to the Commonwealth to contradict it. "It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest." *Doyle* v. *Ohio*, 426 U.S. 610, 619 n.11 (1976), citing *United*

*States* v. *Fairchild,* 505 F.2d 1378, 1383 (5th Cir. 1975).
The prosecutor's reference in closing was consistent with
the state of the evidence and the judge's ruling, and in con-
text does not seem very important.  See *United States* v.
*Davis,* 546 F.2d 583, 594-595 (5th Cir.), cert. denied, 431
U.S. 906 (1977).

6. *Effective assistance of counsel.*  The defendant argues
that he was denied the effective assistance of counsel at
trial, who was different from counsel on this appeal.  We
have reviewed the entire transcript, and find no such serious
deficiency as is contemplated by *Commonwealth* v.
*Saferian,* 366 Mass. 89, 96 (1974).

*Judgment affirmed.*