COMMONWEALTH vs. TIMOTHY O'MALLEY.

Worcester. May 14, 1982. — August 19, 1982.

Present: ARMSTRONG, ROSE, & GREANEY, JJ.

*Escape. Necessity. Practice, Criminal, Motion in limine, Fair trial.*

Where the defendant on a complaint charging escape from a correctional institution claimed that his actions were justified under the doctrine of necessity, it was error for the judge, acting on the basis that the defendant would be unable to adduce sufficient evidence to raise jury issues on certain essential elements of proof, to allow the prosecutor's pretrial motion to exclude all evidence of necessity, in view of the defendant's own testimony on voir dire that named individuals had threatened him with death in the event he was transferred to a certain correctional institution, that his immediate transfer to that institution had been ordered, and that his complaints to the correctional officer in whose control he was had been futile. [319-321]

On appeal from a conviction of escape from a correctional institution, following a trial from which the judge had excluded evidence that the defendant's actions were justified under the doctrine of necessity, this court did not determine whether the defendant had adduced on voir dire sufficient evidence to raise a jury question of his good faith intention to return to custody, where the prosecution had not presented this issue at the time of the hearing on its motion in limine. [321-322]

Discussion of appropriate restrictions on the use of a motion in limine by the prosecutor at a criminal trial. [323-325]

COMPLAINT received and sworn to in the Clinton Division of the District Court Department on September 8, 1980.

In the jury session of the Central Worcester Division of the District Court Department the case was heard by *Kelleher, J.*

*Robert I. Warner* for the defendant.

*Lynn Morrill Turcotte,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. The defendant was charged by complaint with escaping from the pre-release center of the Massachu-

setts Correctional Institution (M.C.I.) at Lancaster. G. L. c. 268, § 16. The defendant believed that at the time of the escape, his life was endangered by an impending transfer to M.C.I., Concord. He therefore sought to defend the charge on the ground that his action was justified under the doctrine of necessity. See *Commonwealth* v. *Thurber*, 383 Mass. 328 (1981).

The defendant claimed trial before a jury of six in the District Court. On the day scheduled for trial, the prosecutor brought an oral motion, in the nature of a motion in limine, to exclude the defendant's evidence of necessity on the ground that it would be insufficient to raise that defense as matter of law. Over the defendant's objection, the judge decided to hold a voir dire on the motion, which took place the following day. After hearing the defendant's testimony and an offer of proof (the evidence), the judge allowed the motion, ruling that "the defendant is not entitled to the defense." The defendant stated his objection to that ruling. Having preserved his rights, the defendant waived his jury claim and the trial proceeded before the judge, who found him guilty as charged. The defendant was then sentenced to a term of three months in a house of correction, to be served from and after the sentence he was then serving.

The defendant argues on appeal, as he did to the judge, (1) that the evidence was sufficient to raise a jury question on the defense of necessity; and (2) that it was improper for the Commonwealth to use the standard motion in limine procedure to "knock out" all of his evidence as insufficient before it reached the jury. Although we analyze the case somewhat differently, we conclude that the defendant is entitled to a new trial.

We summarize the facts as they appear from the testimony of the defendant, who was the only witness at the voir dire.[1]

---

[1] As background, the defendant testified that he was thirty-one years old, that he was a high school graduate, and that he had taken college courses in an extension program of Harvard University and on educational release at the University of Massachusetts in Amherst. The offenses for which he was incarcerated during the period relevant to the defense do not appear here, although his prior record appears to have been lengthy.

In 1974, the defendant was incarcerated at M.C.I., Walpole, and was scheduled to be transferred temporarily to M.C.I., Bridgewater. Also at Walpole were Richard Devlin, "Peter" Wilson and Carmen Gagliardi (Devlin gang),[2] who were awaiting trial for conspiring to murder another inmate. The Devlin gang knew that the Commonwealth's primary witness against them was then being held at Bridgewater, and also knew that the defendant was about to be transferred there. They approached the defendant and attempted to "recruit" him to kill the witness while at Bridgewater. The defendant, however, made no attempt to comply. In July, 1974, upon returning to Walpole, the defendant was told that he had "failed . . . [his] mission," and threats were made on his life. A few weeks later, he was attacked in his cell by several members of the Devlin gang's "execution squad," who were armed with knives.

Following this attack, the defendant informed the Massachusetts State police of the Devlin gang's attempt to recruit him to kill the witness at Bridgewater. The defendant was then transferred to the Hampshire County house of correction. In October, 1974, he testified for the Commonwealth regarding the attempted recruitment at the trial of Devlin, Wilson and Gagliardi, which ended in a mistrial. In the spring of 1975, he repeated that testimony at the retrial of Devlin and Wilson.[3] Also at the retrial, another inmate testified that he had heard from Devlin and Wilson that the defendant was to be killed. In November, 1975, the defendant was released on parole.

After he was released, the defendant continued to receive threats on his life. In the winter of 1978, he was returned to custody at the Worcester County house of correction. Also

---

[2] Devlin was convicted of manslaughter for a killing in which the victim was shot, dismembered and decapitated. See *Commonwealth* v. *Devlin*, 365 Mass. 149, 150-151 (1974). Robert Wilson, also known as "Peter Quish," was convicted as an accessory in that case for threatening to kill Commonwealth witnesses. *Id.* at 150, 156-157 and nn.5 & 6.

[3] Gagliardi was killed at Walpole following the first trial.

incarcerated there was Devlin's brother Robert, who sent the defendant a message informing him that "the first shot he got, he was going to kill" the defendant. Sometime thereafter, Robert Devlin was transferred to Walpole. In November, 1979, the defendant was transferred to Concord. In May, 1980, one Larry McBride also arrived there, and was placed in the receiving section of the institution. McBride was also one of the Devlin gang's "executioners," and the defendant shortly received word that "as soon as McBride came off the [receiving] line . . . [he] was going to have a knife in . . . [his] chest."

Ultimately, on June 26, 1980, the defendant was transferred to the pre-release center at Lancaster. There, he was threatened that "if he returned to Concord he was facing death." While in Lancaster, the defendant was employed on work release at an automobile dealership in Worcester. On September 6, 1980, he returned from work at approximately 10:00 P.M.[4], and was confronted by Officer Donald McGuirk. McGuirk informed him that another officer had tried to telephone him between 8:00 and 8:30 P.M.; that no one had answered at the dealership; that the officer had then telephoned the superintendent's office; and that the deputy superintendent had told McGuirk that the defendant was to be treated as an escaped prisoner, and was to be transferred back to Concord that same night.

The defendant was "scared to death" at the prospect of being returned to Concord and placed "in the receiving line" with Larry McBride. He told McGuirk that he had not been trying to escape, and that this could be verified by telephone. He attempted to "explain why . . . [he was] concerned about going back to Concord," but McGuirk would "[n]ever give . . . [him] a chance" to do so. Since the transfer was to take place "right then and there," he

---

[4] It does not appear from the record whether the defendant was required to return from work by a fixed time or, if so, what time that was.

asked McGuirk to call the superintendent, but McGuirk refused and placed him in a locked room by himself.[5]

Later that night, when he had the opportunity, the defendant escaped from the center. On cross-examination, the prosecutor asked him whether, following the escape, he made an "attempt to seek any other official [i.e., other than McGuirk] with regard to . . . [his] problem in Concord." The defendant responded, "Yes. Yes, I did," although he did not "turn . . . [him]self in."

The defendant was apprehended in Worcester on the afternoon of September 11, 1980. Notwithstanding the preceding events, he was then returned to Concord. The following morning, he awoke to find that the inmate in the next cell was Larry McBride. On September 30, 1980, according to a mittimus introduced at trial, he was removed from Concord to a hospital. The defendant offered to prove that he had been struck in the face with a club, that his cheek bones had been broken, that he was hospitalized for four days, and that the attack was made as retribution for his testimony against the Devlin gang in 1974. In addition, the defendant offered the testimony of Lieutenant Detective Spartachino of the Massachusetts State police, who was to corroborate the defendant's account of the events of 1974, including the attempt on his life and his cooperation with the Commonwealth, as well as the fact that his life continued to be in danger if he was placed within reach of the Devlin gang's confederates.

The judge based his decision to exclude the defense on express rulings (1) that the "threats of force [made against the defendant] . . . [were] not present, immediate or impending and . . . such in nature as to induce a well-founded fear of death or at least serious bodily injury"; and (2) that the evidence did not show that "there was no reasonable opportunity to avoid the situation without . . . [escaping]."

---

[5] McGuirk testified at trial that he was a correctional counselor; that the defendant was not one of his counselees; that he knew the defendant only in passing; and that he had no knowledge of the defendant's prior institutional difficulties.

1. The defendant argues that the evidence was sufficient to raise a jury question on the defense of necessity. The only Massachusetts case in point, *Commonwealth* v. *Thurber*, 383 Mass. 328 (1981), had not been decided at the time of trial. In that case, the Supreme Judicial Court focused on a formulation of the defense which requires the presence of five specified circumstances, see *People* v. *Lovercamp*, 43 Cal. App. 3d 823, 831-832 (1974),[6] and stated the following: "Assuming that we would apply the doctrine as a justification for escape in a proper case,[7] we think such circumstances should at least be taken into account." *Commonwealth* v. *Thurber, supra* at 330. As to the showing required to raise the defense, the court stated that the defendant must produce "evidence that would warrant a reasonable doubt whether the escape was justified by necessity." *Id.* at 331.

Here, the judge held the evidence insufficient on grounds equivalent to the first and second points of the *Lovercamp* formulation. That ruling was error. The evidence tended to show a long history of threats on the defendant's life; a recent threat of death "if he returned to Concord"; a prior attempt to kill him; and another attack following his return to Concord. It also tended to show that the transfer was to take place "right then and there." This evidence was sufficient to raise a question for the jury, as to the first point, that the defendant was "faced with a specific threat of

---

[6] As set out in the *Thurber* decision, *supra* at 330, the circumstances appearing in the cited pages of *Lovercamp* are as follows: "(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future; (2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory; (3) There is no time or opportunity to resort to the courts; (4) There is no evidence of force or violence used towards prison personnel or other 'innocent' persons in the escape; and (5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat."

[7] Although the court did not formally recognize the doctrine of necessity as a defense in this context, we read this language as advising that it would likely do so in a proper case. Based on the facts set out above, we think that the present case is a proper one, and that the defense would be held available here.

death . . . or substantial bodily injury in the immediate future." *Commonwealth* v. *Thurber, supra* at 330. There was also evidence that Officer McGuirk was, as previously ordered, treating the defendant as an escapee; that he refused to allow the defendant to explain the danger to which he was being sent at Concord; and that he refused to contact an official with authority to revoke the transfer order. This evidence was sufficient to warrant a jury finding, as to the second point, that the defendant made a "complaint to the authorities," that it was "futile," and that he was, in fact, prevented from complaining further. *Ibid.* On this issue, we also think it relevant that, as the defendant testified, upon his return to Concord the authorities placed him in the cell next to Larry McBride.

The Commonwealth argues here, although it made no equivalent argument below, that the defendant failed to show, as to the fifth point,[8] that he "immediately report[ed] to the proper authorities when he . . . attained a position of safety from the immediate threat." *Ibid.* On this point, the evidence was that following the escape, the defendant attempted to seek out some "official" regarding the dangerous situation he faced at Concord, but did not turn himself in. Viewed in the light most favorable to the defendant, see *Commonwealth* v. *Martin,* 369 Mass. 640, 644 (1976), and cases cited, this evidence tends to show the existence of a good faith intent to return to custody. Such an intent was considered sufficient to raise a jury question in several of the cases cited by *Commonwealth* v. *Thurber, supra* at 330, to illustrate the varying formulations of this defense. See *People* v. *Lovercamp, supra* at 832; *People* v. *Unger,* 66 Ill. 2d 333, 342-343 (1977). Contrast *United States* v. *Bailey,* 444 U.S. 394, 399, 411-413 (1980). See generally Annot., 69 A.L.R.3d 678, 688-689 (1976 & Supp. 1981). Moreover, the *Thurber* case appears to have decided only that the

---

[8] The Commonwealth does not argue the sufficiency of the evidence on the third point, and appears to concede that the fourth point is inapplicable.

circumstances required by the *Lovercamp* formulation "should at least be taken into account" in considering the presence of necessity and explaining the doctrine to the jury. *Commonwealth* v. *Thurber*, 383 Mass. at 330-331. We pursue this analysis no further, however, because we do not think the sufficiency of the defendant's evidence as to the fifth point was fairly placed in issue at the voir dire.

2. As initially stated, the basis for the prosecutor's motion, which was not brought in compliance with the explicit requirements of Mass.R.Crim.P. 13(a), 378 Mass. 871 (1979),[9] was vague. As the scope of the motion emerged, defense counsel (counsel) was clearly surprised to learn of its breadth. Ultimately, it became apparent that the motion was directed at virtually all the defendant's evidence, and that it was based on grounds equivalent to the first and second points of the *Lovercamp* formulation (i.e., imminence of harm and availability of alternatives). The judge then asked the prosecutor, "Can't you argue that to the jury?", and proceeded to deny the motion. After further argument, however, the judge decided to hear the evidence in question. Accordingly, at the voir dire, counsel's examination of the defendant was directed at the two points stated as the grounds for the prosecutor's motion, as was his offer of Lieutenant Spartachino's testimony, his argument on the law, and the prosecutor's argument.

The only question of any duty to report to proper authorities following the escape, equivalent to the fifth point, was raised sua sponte by the judge, who then asked counsel to address the rule stated in *United States* v. *Bailey*, 444 U.S. at 415 (holding that defense of necessity requires showing that defendant immediately made unconditional "effort to

---

[9] The various subdivisions of rule 13(a) provide that a pretrial motion "shall be in writing," that it "shall state the grounds on which it is based and shall include in separately numbered paragraphs all reasons . . . which shall be set forth with particularity"; that it be formally served in compliance with rule 32; and that a memorandum of law may be required as a "condition precedent" to a hearing on the motion.

surrender or return" to custody which presented danger from which he escaped). In response, counsel suggested that this case was not the "law in this Commonwealth." The judge agreed, and the prosecutor did not seek to argue the point. Moreover, the judge made no mention of this point in stating the grounds of his ruling, relying solely on the two points stated as the grounds for the prosecutor's motion.

In view of (a) the failure of the prosecutor's motion to place the question of a report in issue, cf. *Corey* v. *Commonwealth*, 364 Mass. 137, 141 n.7 (1973); (b) the likelihood that this defect may have affected "the ultimate 'integrity of the fact-finding process,'" *Commonwealth* v. *Francis*, 375 Mass. 211, 214, cert. denied, 439 U.S. 872 (1978), quoting from *Chambers* v. *Mississippi*, 410 U.S. 284, 295 (1973); (c) the otherwise exclusive focus of the voir dire on the first and second points of the *Lovercamp* formulation; (d) the fact that the judge agreed with counsel that the *Bailey* case was inapposite; and (e) the fact that the *Thurber* case had not yet been decided; we conclude that the defendant should not now be deprived of an opportunity to present his defense on the ground of any insufficiency of the evidence on the fifth point.[10]

---

[10] We recognize that, following the judge's inquiry, counsel might have made an offer of proof on that point. At that time, however, the evidence was closed, his offer of proof had been made, the arguments of both counsel were completed, and all had been directed at the two points raised by the motion. Thus, the fifth point appears to have been interjected, and summarily disposed of, as a mere afterthought. For that reason, and because the judge did not pursue counsel's response by requesting an offer of proof, we think counsel could properly have assumed that the judge's concern on that point had been satisfied. Likewise, and particularly because the judge made no mention of that point in his ruling, it is no surprise that counsel did not address that point in repeating his offer of proof following the trial.

Moreover, the judge and counsel were correct that *United States* v. *Bailey, supra,* was not, in fact, the law in this jurisdiction. That case turned on a construction of the Federal prison escape statute, *id.* at 413-414, and also characterized necessity as an "affirmative defense," *id.* at 415, a view later rejected in *Commonwealth* v. *Thurber, supra* at 331. Indeed, although the case is cited in the *Thurber* decision, the Supreme Ju-

3. In view of this conclusion, it is unnecessary to address in detail the defendant's broader argument that the prosecutor's use of a pretrial motion in limine to challenge the sufficiency of his evidence, rather than its admissibility, violated his right to present a defense under the United States Constitution and the Massachusetts Declaration of Rights. See *Chambers* v. *Mississippi, supra* at 294-295; *Commonwealth* v. *Bohannon,* 376 Mass. 90, 94-95 (1978). But cf. *United States* v. *Bailey, supra* at 416-417. Some discussion of this question, however, appears appropriate.

The "fundamental" right to present a defense includes the defendant's "right to present . . . [his] version of the facts." *Commonwealth* v. *Francis, supra* at 213, quoting from *Washington* v. *Texas,* 388 U.S. 14, 19 (1967). In receiving evidence of those facts, the trial judge is to be guided by the rule that "all relevant evidence is admissible unless barred by an exclusionary rule." *Commonwealth* v. *Thompson,* 382 Mass. 379, 383 (1981), quoting from *Commonwealth* v. *Vitello,* 376 Mass. 426, 440 (1978). If the defendant presents "some evidence" on each element of a defense, see *Commonwealth* v. *Robinson,* 382 Mass. 189, 208 n.24 (1981), he is entitled to an instruction thereon based upon the hypothesis that the testimony, "however incredible," is entirely true. *Commonwealth* v. *Campbell,* 352 Mass. 387, 398 (1967). *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 746 (1975). *Commonwealth* v. *Martin,* 369 Mass. at 644. *Commonwealth* v. *Hogue,* 6 Mass. App. Ct. 901 (1978). See *Commonwealth* v. *Robinson, supra* at 201-202; *Commonwealth* v. *Melzer, ante* 174, 184 (1982).

The notion of using a pretrial motion to test the adequacy of the entire defense case as matter of law appears to be inimical to these principles. The proper "purpose of a motion in limine is to prevent irrelevant, inadmissible or prejudi-

dicial Court did not adopt its stringent "surrender or return" rule, but chose to focus instead on the "report" language appearing in the *Lovercamp* formulation.

cial matters from being admitted in evidence." *Commonwealth* v. *Lopez*, 383 Mass. 497, 500 n.2 (1981). See generally Annot., 63 A.L.R.3d 311 (1975); Rothblatt & Leroy, The Motion in Liminie [*sic*] in Criminal Trials: A Technique for the Pretrial Exclusion of Prejudicial Evidence, 60 Ky. L.J. 611 (1972). Cf. Comment, The Use of Motions in Limine in Civil Litigation, 1977 Ariz. St. L.J. 443, and commentaries cited at 443 n.2. Since it can seldom be deemed irrelevant or prejudicial to allow a defendant to tell his story to the jury, motions in limine are generally used by the Commonwealth to test the admissibility, rather than the sufficiency, of particular items of anticipated evidence. See, e.g., *Commonwealth* v. *Lopez, supra* (Commonwealth's motion to exclude evidence of prior acquittals on companion charges).[11] Cf. *Commonwealth* v. *Mosby*, 11 Mass. App. Ct. 1, 12-16 & n.10 (1980) (defendant's motion to admit testimony under exception provided in rape shield law); *Commonwealth* v. *Bailey*, 12 Mass. App. Ct. 104, 106 n.3 (1981) (defendant's motion to bar reference to letter containing alleged admission).

As a consequence, prosecutors should bear in mind that "[t]he motion should be used, if used at all, as a rifle and not as a shotgun." *Lewis* v. *Buena Vista Mut. Ins. Assn.*, 183 N.W. 2d 198, 201 (Iowa 1971). That is, any such motion must be narrowly limited to focus on a discrete issue or item of anticipated evidence. "It must not be used to choke off a valid defense in a criminal action," *State* v. *Quick*, 226 Kan. 308, 311 (1979), or to "knock out" the entirety of the evidence supporting a defense before it can be heard by the

---

[11] We are aware of cases in which evidence of justification has been excluded as insufficient by means of such a pretrial motion, see *Commonwealth* v. *Brugmann*, 13 Mass. App. Ct. 373, 375, 379 (1982), or during the course of trial, see *Commonwealth* v. *Kennedy*, 4 Mass. App. Ct. 772 (1976); *Commonwealth* v. *Averill*, 12 Mass. App. Ct. 260, 262 (1981). Those cases, however, involved only the substantive question of the sufficiency of the evidence, and did not call upon us to consider the procedural question raised here, namely, whether sufficiency would more properly be assessed at the close of all the evidence.

jury. Likewise, neither counsel nor the judge should permit a criminal trial by jury to be converted into a trial by motion, with the possible effect of directing a verdict against the defendant. Nor should they allow the motion to be used to discover evidence which the defendant has not been required to disclose in the normal course of discovery. See Mass.R.Crim.P. 11 & 14, 378 Mass. 862, 874 (1979).

In the usual case, therefore, it is far more prudent for the judge to follow the traditional, and constitutionally sounder, course of waiting until all the evidence has been introduced at trial before ruling on its sufficiency to raise a proffered defense. If, at that time, the defendant has failed to produce some evidence on each element of the defense, the judge should decline to instruct on it. Compare *Commonwealth* v. *Thompson*, 382 Mass. at 382-383, with *id.* at 385-386. In that event, the judge may, if appropriate, give curative instructions to caution the jury against considering evidence not properly before them. See, e.g., *Commonwealth* v. *Campbell*, 371 Mass. 40, 43-44 (1976); *Commonwealth* v. *Lacy*, 371 Mass. 363, 365 (1976).

4. There is one question likely to arise on retrial. The defendant argues, under *Miranda* v. *Arizona*, 384 U.S. 436 (1966), that the judge erred in declining to strike the trial testimony of the arresting officer regarding a statement made by the defendant. The judge could properly have found that the statement was made spontaneously, rather than as a result of "interrogation" within the meaning of *Rhode Island* v. *Innis*, 446 U.S. 291, 298-302 (1980). See *Commonwealth* v. *Kelly*, 10 Mass. App. Ct. 847, 848-849 (1980). The statement is therefore admissible on retrial.

5. The judgment is reversed, the finding set aside, and the case remanded for a new trial.

*So ordered.*