Commonwealth *v.* Mandile.

COMMONWEALTH *vs.* RICHARD A. MANDILE.

Suffolk. February 14, 1984. — March 28, 1984.

Present: GREANEY, C.J., CUTTER, & WARNER, JJ.

*Escape. Necessity. Practice, Criminal,* Instructions to jury. *Constitutional Law,* Self-incrimination. *Evidence,* Relevancy and materiality, Cumulative.

At the trial of a defendant charged with escape from a house of correction, there was no error in the judge's instructions to the jury respecting necessity as a justification for escape. [659-661]

At the trial of a defendant charged with escape from a house of correction, when the prosecutor, while cross-examining the defendant, asked about the names of persons with whom the defendant had stayed after his escape and the defendant refused to answer, the judge correctly ruled that the questions were relevant to the issue on trial and that the defendant had waived his privilege against self-incrimination. [661-662]

At the trial of a defendant charged with escape from a house of correction where the defendant claimed necessity as a defense, any error in the exclusion during cross-examination of a correction officer of a question as to whether the officer knew that the defendant "had some problems with inmates" at the house of correction was harmless beyond a reasonable doubt in view of the circumstances, including other testimony on the subject. [662-663]

INDICTMENTS found and returned in the Superior Court Department on July 10, 1980.

The cases were tried before *Forte,* J., a District Court judge sitting under statutory authority.

*Michael S. Gallagher* for the defendant.

*Patrick J. Roache, Jr.,* Assistant District Attorney, for the Commonwealth.

CUTTER, J. Mandile was found guilty of escape, G.L. c. 268, § 16, as appearing in St. 1973, c. 1062.[1] On this appeal only

[1] Section 16 reads in part, "A prisoner who escapes . . . from any penal institution . . . or from the custody of any officer thereof . . . may be pursued

questions relating to that conviction seem to be the subject of significant argument, although, as stated below, other charges were tried at the same time.

Mandile was confined in the maximum security unit of a house of correction (Deer Island) on April 7, 1980. About 8 P.M. Officers Hepburn and Nichols were there on duty. Mandile, a "trusty," had been outside his cell sweeping and had managed to turn off the switch which controlled the alarm. Another prisoner, Louis McGrath, also was outside his cell. Mandile suddenly ran toward the officers brandishing a sharpened thick piece of steel over a foot long, which he pressed to the neck of one of them. McGrath, at Mandile's direction, handcuffed Officer Hepburn. Mandile took Officer Hepburn's keys, and the two officers were locked in a cell. When the officers were able to leave the cell, Mandile and McGrath were not in the institution.

Mandile stayed with unidentified acquaintances in Malden. He was arrested on April 11, 1980. At trial he testified that, while not in custody, he took no action at all to let any government authority know where he was or the reason why he had escaped.

Mandile had been a witness against one Ronald MacDonald at the latter's trial for murder. See *Commonwealth* v. *MacDonald (No. 1)* and *(No. 2),* 368 Mass. 395, 396-397; and 403, 405-408 (1975). At trial in the present case he testified that following the murder trial he had difficulty protecting himself while in confinement, and had received on the very day of his escape word of threats by a cousin of MacDonald. In 1977, on furlough, he had been attacked and seriously injured by friends of MacDonald. In his opinion, his complaints for greater protection from correction authorities did not receive satisfactory attention. Captain Ward of the Suffolk County sheriff's department testified that he had seen Mandile in 1977 at Deer Island "all bandaged up" and with "[h]is head banged in," and that "[o]ver the years" Mandile had been "more or less" in protective custody (see *Blaney* v. *Commissioner of Correction,* 374

---

and recaptured and shall be punished by imprisonment in the state prison for not more than ten years or by imprisonment in a . . . house of correction for not more than two and one half years.''

Mass. 337, 339, 341-342 [1978]) because of "enemies" among inmates. Mandile himself testified to his difficulties in obtaining a transfer to a place of confinement safe for him. His defense at trial was that his escape was a matter of necessity for self-protection.

1. The trial judge instructed the jury on the defense of "necessity" in relation to escape from custody in language largely based upon *People* v. *Lovercamp,* 43 Cal.App. 3d 823, 831-832 (1974), as quoted in *Commonwealth* v. *Thurber,* 383 Mass. 328, 330 (1981). See *Commonwealth* v. *O'Malley,* 14 Mass. App. Ct. 314, 319 (1982), which summarized the effect of the *Thurber* case as drawing attention to "a formulation of the defense [of necessity] which requires the presence of five specified circumstances" mentioned in the *Lovercamp* case.[2] In the *Thurber* case (at 330-331), the court went on to say that, if the court should "apply the doctrine [of necessity] as a justification for escape in a proper case, we think . . . [the *Lovercamp*] circumstances should at least be taken into account." Mandile contends that the trial judge in his charge overstated the *Lovercamp* circumstances, converting them into "essential elements of a defense, the absence of one of which causes the defense to fail."

The judge's charge included the following: "[C]ompulsion to escape may negate a criminal purpose . . . . [N]ecessity may justify an escape. . . . If there is evidence that would warrant a reasonable doubt whether the escape was justified by necessity, then the burden . . . is on the Commonwealth to prove that this escape was not justified." The judge then pointed out that the Commonwealth must prove that Mandile was "a legal prisoner at a penal institution," that he left "the premises without per-

---

[2] As quoted in the *Thurber* case (at 330), the *Lovercamp* circumstances (in part) were "(1) The prisoner is faced with a specific threat of death . . . or substantial bodily injury *in the immediate future*; (2) There is no time for a complaint to the authorities or there exists a history of futile complaints . . . ; (3) There is no time . . . to resort to the courts; (4) There is no evidence of force or violence used towards prison personnel . . . in the escape; and (5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the *immediate threat*" (emphasis supplied).

mission, and [that] there was no necessity." The charge proceeded, "Now, what may you *consider* in determining the justification. There are five aspects to it" (emphasis supplied). The five *Lovercamp* circumstances were then stated by the judge. See note 2, *supra*.

As to Mandile's actions after leaving Deer Island, the judge instructed that, if the jury found that Mandile attained a place safe from immediate threat, when "he reached Malden, then . . . [they] must consider, did he immediately report to the proper authorities. . . . [A]n action is justified by necessity only so far as necessity requires it. It is for you to determine whether . . . [Mandile] had attained a position of safety before his recapture . . . a few days afterwards. . . . [I]f you find the Commonwealth has proved beyond a reasonable doubt the absence of any of those . . . five elements, then the Commonwealth has proved the absence of necessity that would justify an escape."[3] The judge charged correctly.[4]

In the *Thurber* case, 383 Mass. at 332, reference was made to the fact that the trial judge, whose charge was then being reviewed, "instructed the jury that necessity means that the . . . [escaped prisoner] must report to the proper authorities as soon as he is in a position of safety" and declined to add "that it was for the jury to decide when, and if at all, the cause of the neces-

---

[3] Defense counsel objected somewhat generally to this portion of the charge and noted a particular but somewhat ambiguous objection to the judge's refusal "to instruct the jury that, if they reasonably believe that he was not in a position of safety . . . [from] an immediate threat, then he [Mandile] need not report to the . . . authorities." Counsel later added, "I think that's for the escapee — how he perceives there is no immediate threat in his situation." As a consequence of the objection the judge further charged, "[I]f the Commonwealth proves beyond a reasonable doubt that one of those five elements that I went over with you was lacking, then the Commonwealth has proved to you there is no justification of escape."

[4] The pertinent authorities have been collected in the *Thurber* case, 383 Mass. at 330-331, the *O'Malley* case, 14 Mass. App. Ct. at 319-321; and *United States* v. *Bailey*, 444 U.S. 394, 402-416 (1980). In view of the charge approved in the *Thurber* case at 332-333, we do not regard cases like *People* v. *Unger*, 66 Ill. 2d 333, 342-343 (1977), and *State* v. *Baker*, 598 S.W. 2d 540 (Mo. App. 1980), as here controlling. See generally, Model Penal Code, §§ 2.09, 3.02, 3.06, 3.08(5) (Official Draft 1962) & 242.6 (1980).

sity had terminated.''[5] The instruction given was approved when taken in connection with another instruction ''that it was for the jury to determine the facts.'' The trial judge in the present case fully complied with the *Thurber* decision and left the facts for determination of the jury. Cf. *Commonwealth* v. *O'Malley,* 14 Mass. App. Ct. at 322-325, where the whole defense of necessity was prevented on a prosecutor's pretrial motion in limine.

The trial judge, after his original charge, instructed, perhaps too broadly, that if the jury should ''find that . . . Mandile is not guilty . . . of escape and . . . that he only used such force as was reasonable and necessary to effectuate that escape,'' then the jury ''would be warranted in finding him not guilty of assault and battery on a correction officer.'' Despite this favorable instruction (the propriety of which we do not decide), the jury found Mandile guilty of such an assault (on an indictment tried with the present escape charge), an indication that the jury had found evidence of another aspect of the *Lovercamp* principles, viz., force or violence used toward prison personnel. See Note 2, clause (4), *supra.*

2. Mandile, in the presence of the jury, refused during cross-examination to answer the prosecutor's questions about the names of the persons in Malden with whom he stayed after his escape. His counsel objected to the questions. Mandile had denied any effort on the night of his escape to call Deer Island or

---

[5] It has been said that necessity cannot be a defense to a charge of escape unless the inmate escaping ''intends to turn himself in to proper authorities once he has extricated himself from his highly dangerous immediate situation.'' *United States* v. *Boomer,* 571 F.2d 543, 545 (10th Cir.), cert. denied sub nom. *Heft* v. *United States,* 436 U.S. 911 (1978), a decision which adopted the *Lovercamp* principle with respect to an escape prosecuted under what is now 18 U.S.C. § 751(a) (1982), treating escape as a continuing offense. Cf. *Commonwealth* v. *Ciesla,* 380 Mass. 346, 348 (1980), which does not deal with G. L. c. 268, § 16. The Supreme Court has held ''that, in order to be entitled to an instruction on . . . necessity as a defense to the crime charged, an . . . [escaped prisoner] must first offer evidence justifying his continued absence from custody as well as his initial departure and that an indispensable element of such an offer is testimony of a bona fide effort to . . . return to custody as soon as the claimed . . . necessity had lost its coercive force.'' *United States* v. *Bailey,* 444 U.S. 394, 412-413 (1980).

any correction official to let them know where he was. Applying the principles discussed in the *Thurber* case, the trial judge ruled that the question was relevant and, because Mandile had testified, was not open to a Fifth Amendment claim of privilege. The judge ordered the question answered, but no answer was given. The question was relevant in view of Mandile's attempt to prove necessity as a defense in the very proceeding in which he was testifying. Contrast *Commonwealth* v. *Borans,* 388 Mass. 453, 457 (1983). He, by testifying in that proceeding, had waived his privilege against self-incrimination as to questions on cross-examination relevant and material to the charge. on which he then was being tried. See *Jones* v. *Commonwealth,* 327 Mass. 491, 493-494 (1951); Liacos, Handbook of Massachusetts Evidence 206 (5th ed. 1981).

3. Officer Hepburn, on cross-examination, was asked whether he knew that Mandile ''had some problems with inmates'' at Deer Island. The question was excluded as not material. Defense counsel then invited the judge's attention to the *Thurber* case, 383 Mass. at 330, but the judge stated that he would ''exclude the question *at this time*'' (emphasis supplied). Defense counsel then made a brief offer of proof that Officer Hepburn ''did know of Mandile's problems with various inmates.'' Thereafter, Mandile himself testified about threats made to him. Testimony about such threats and risks of harm to Mandile also was given by Captain Ward, called by Mandile. Officer Hepburn was not recalled as a witness by Mandile after the Commonwealth had rested.

We assume (without deciding) that Mandile should have been allowed to inquire further about Officer Hepburn's knowledge of threats against Mandile, although defense counsel perhaps could have made known to the judge more clearly the precise legal basis of his inquiry. See *Commonwealth* v. *Britland,* 300 Mass. 492, 496-497 (1938); Mass.R.Crim.P. 22, 378 Mass. 892 (1979). Compare *Commonwealth* v. *Smallwood,* 379 Mass. 878, 889 (1980); *Commonwealth* v. *McCreary,* 12 Mass. App. Ct. 690, 694-698 (1981). We view any error as harmless beyond a reasonable doubt, especially in view of the other testimony on the subject, the failure of

Mandile to recall Officer Hepburn after the judge had oppor-
tunity to study the *Thurber* case, and the circumstance that
Officer Hepburn's testimony would have had no direct rele-
vance to Mandile's attack on him during the escape or to
Mandile's failure to get in touch with the authorities promptly
after his escape. See *Commonwealth* v. *Hanger,* 377 Mass. 503,
510-511 (1979).

*Judgments affirmed.*