COMMONWEALTH vs. SYLVESTER LINDSEY.

Suffolk.  December 2, 1985. — March 5, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Firearms. Necessity. Self-Defense.*

At the trial of a defendant on indictments for assault with intent to murder, assault and battery by means of a dangerous weapon, and unlawful carrying of a firearm on his person in violation of G. L. c. 269, § 10 (*a*), where evidence tended to prove that the defendant had carried a gun from his home in anticipation of the possibility of an encounter with the victim, who had earlier threatened him, and had then shot the victim in defending himself against the victim's knife attack at an MBTA station, the judge was not required to instruct the jury, with respect to the gun carrying charge, that the Commonwealth had to prove beyond a reasonable doubt that in carrying the firearm the defendant did not act reasonably out of necessity or in self-defense, where there was no evidence that the defendant was subject to a direct and immediate threat of serious injury throughout the time he carried the gun outside his home. [842-846]

INDICTMENT found and returned in the Superior Court Department on October 7, 1983.

The case was tried before *Robert L. Steadman*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Patricia A. O'Neill*, Committee for Public Counsel Services (*Paul L. McGill*, Committee for Public Counsel Services, with her) for the defendant.

*Judy G. Zeprun*, Assistant District Attorney (*Gary Schubert*, Assistant District Attorney, with her) for the Commonwealth.

*Richard A. Voke, J. John Fox & Thomas J. Carey, Jr.*, amici curiae, submitted a brief.

WILKINS, J.  The defendant was indicted for assault with intent to murder, assault and battery by means of a dangerous weapon, and unlawful carrying of a firearm on his person. A jury found him not guilty of the assault crimes and guilty of

the charge of unlawful carrying of a firearm. Although the evidence, including the defendant's testimony, demonstrated that he shot one Edward Michel, the evidence from the defendant and witnesses other than Michel tended to show that he did so in self-defense when Michel assaulted him with a knife.

Presumably the evidence bearing on self-defense led the jury to their two verdicts of not guilty.[1] The trial judge had declined, however, to instruct the jury that they could also consider reasonable apprehension of serious bodily harm as a justification for the carrying of a firearm in circumstances that otherwise would be a violation of G. L. c. 269, § 10 (*a*) (1984 ed.). The sole issue on appeal is whether the defendant was entitled to an instruction to the effect that the Commonwealth had to prove beyond a reasonable doubt that in carrying the firearm the defendant did not act reasonably out of necessity or in self-defense.[2] We granted the defendant's application for direct appellate review of his conviction and now affirm that conviction.

We conclude that such an instruction was not required because there was no evidence that the defendant was subject to a direct and immediate threat of serious injury throughout the time he carried the gun outside his home. Our affirmance of the defendant's conviction means that, in the absence of relief from another branch of government, he must serve the one-year sentence mandated by G. L. c. 269, § 10 (*a*), of which the trial judge stayed the execution pending appeal.

---

[1] It would be incorrect to say that the jury found that the defendant acted reasonably in defense of himself. It seems likely, however, that, as the issue was properly put to them, the jury concluded that the prosecution failed to prove beyond a reasonable doubt that the defendant did not act in self-defense.

[2] Although the defendant's requests for instructions relied on a theory of self-defense, the defense of necessity may be a more apt characterization. See *United States* v. *Nolan*, 700 F.2d 479, 484 n.1 (9th Cir.), cert. denied, 462 U.S. 1123 (1983); *United States* v. *Gant*, 691 F.2d 1159, 1162 n.5 (5th Cir. 1982); *United States* v. *Panter*, 688 F.2d 268, 272 n.7 (5th Cir. 1982); Model Penal Code § 3.02 comment 1 (1985); W. LaFave & A.W. Scott, Jr., Criminal Law §§ 50, 53, at 391 n.2 (1972).

In determining whether the evidence required an instruction concerning action taken out of necessity, we view the evidence in its light most favorable to the defendant. The defendant shot Michel shortly after 7 A.M. on August 31, 1983, at the Fields Corner MBTA station in the Dorchester section of Boston. The two, who had been employees of an ice cream manufacturing company, had exchanged angry words at work a few days before the shooting. Subsequently, on Monday, August 29, Michel had challenged the defendant to a fight and, when the defendant declined, had pursued him, charging the defendant with a knife. The defendant fended Michel off and escaped. That same day the defendant complained to the police and sought a complaint at the Dorchester District Court against Michel for assault and battery with a dangerous weapon. On the next day, fellow employees told the defendant that Michel was claiming that he would "get" the defendant.

When the defendant left his home in Cambridge for work on Wednesday (August 31), he carried a firearm although he was not licensed to do so, because he "was afraid of getting stabbed." Michel approached the defendant, who stood waiting for a bus at the MBTA station. At a distance of ten feet, Michel pulled a knife from his jacket. The defendant backed up and told Michel to forget it and to drop the knife, but Michel continued to advance "very fast." When Michel was six feet away and still advancing, the defendant, in fear for his life and acting to protect himself, drew his gun and fired at Michel. The defendant then went home not knowing whether Michel had been hit and called a lawyer, who accompanied him to a police station. Although Michel testified to a considerably different version of the incidents described by the defendant, several disinterested witnesses substantially corroborated the defendant's testimony.

The history of Massachusetts gun control legislation in this century shows an unwavering legislative intent that one may lawfully carry a firearm only if he has a license or qualifies for a specific statutory authorization. This court has said that the intent of G. L. c. 269, § 10, "is to protect the public from the potential danger incident to the unlawful possession of such

weapons." *Commonwealth* v. *Bartholomew*, 326 Mass. 218, 219 (1950). We have read § 10 (*a*) as requiring proof that the accused knew he was carrying a firearm but have held that § 10 (*a*) does not offend due process by imposing a mandatory one-year sentence even on a person who does not know of the license requirement. *Commonwealth* v. *Jackson*, 369 Mass. 904, 916-917 (1976). In the *Jackson* case, we recognized the constitutional authority of the Legislature to conclude that "harsh, inflexible penalties are needed to serve as a deterrent and that the need for deterrence, in light of the potential danger created by the unlawful carrying of a firearm, should be the primary, if not the sole, objective of the statute." *Id*. at 919. We added that it is not the function of this court to inquire into the wisdom of the legislative judgment, once it is established that the Legislature acted within constitutional limits. *Id*. at 919-920. Any exceptions that we have found to the general prohibition of § 10 (*a*) have been based on legislative intent. *Commonwealth* v. *Rhodes*, 389 Mass. 641 (1983) (BB gun, regulated by another statute, not regulated by § 10 [*a*] ). *Commonwealth* v. *Seay*, 376 Mass. 735, 742 (1978) (Legislature authorized unlicensed person with valid firearm indentification card to carry firearm within his residence or place of business). This court has shown no general inclination to treat the prohibitions of § 10 (*a*) lightly or to find in § 10 (*a*) some saving flexibility in favor of a sympathetic defendant enmeshed in the web of a mandatory sentence. Our conclusion in this case is consistent with our firm and established view of the prohibitions of § 10 (*a*).

This court has never had an occasion to decide whether action taken out of necessity (or in self-defense, or under duress) might justify the carrying of a firearm in violation of the literal provisions of G. L. c. 269, § 10 (*a*). We noted the question, although it was not presented for decision, in *Commonwealth* v. *Franklin*, 376 Mass. 885, 888 n.2 (1978). See *Commonwealth* v. *Robinson*, 382 Mass. 189, 198-200 (1981), for a discussion of duress, and *Commonwealth* v. *Thurber*, 383 Mass. 328, 330 (1981), for a discussion of necessity. The Appeals Court, in *Commonwealth* v. *Brown*, 10 Mass. App.

Ct. 935, 936 (1980), seems to have assumed without discussion that justification for carrying a gun might negate the crime.

Other jurisdictions have recognized that particular circumstances may justify possession or carrying of a firearm in apparent violation of a statute so as to warrant a not guilty finding. In States where self-defense or necessity is recognized by statute as a justification, the courts have acknowledged that the prohibitions of firearms statutes might be inapplicable to one acting reasonably in defense of himself in a serious emergency. See *People* v. *King*, 22 Cal. 3d 12, 26 (1978); *State* v. *Jackson*, 452 So. 2d 776, 779 (La. App. 1984); *State* v. *Harmon*, 203 N.J. Super. 216, 222-223 (1985); *Johnson* v. *State*, 650 S.W.2d 414, 416 (Tex. Crim. App. 1983). Even in the absence of a statute on self-defense or necessity, numerous courts have acknowledged the possibility that a person's conduct might be justified despite a showing of all the basic elements of unlawful possession. See *United States* v. *Gant*, 691 F.2d 1159, 1162-1165 (5th Cir. 1982) (defendant did not show necessary elements of the affirmative defense of justification); *State* v. *Walton*, 311 N.W.2d 113, 115-116 (Iowa 1981) (evidence did not raise a jury question on defense of necessity); *Medley* v. *State*, 52 Md. App. 225, 236 (1982) (same); *State* v. *Spaulding*, 296 N.W.2d 870, 877 (Minn. 1980) (jury adequately instructed on defense of necessity in felon's possession of a pistol). Cf. *People* v. *Almodovar*, 62 N.Y.2d 126, 130 (1984) (a suddenly discovered weapon or one taken from an assailant would not constitute unlawful possession).

Each statement of the rule of necessity in these authorities includes, expressly or impliedly, the requirement that the threat to the defendant must be immediate, substantial, and unavoidable and that it arise in circumstances in which action in self-defense would have been warranted (i.e., the defendant had a reasonable apprehension of death or serious bodily injury). See, e.g., *United States* v. *Vigil*, 743 F.2d 751, 756 (10th Cir.), cert. denied, 469 U.S. 1090 (1984); *United States* v. *Gant, supra* at 1162-1164. The cases in which courts have found the evidence to have presented a jury question on justifi-

cation are relatively rare and involve situations in which the defendant came into possession of the weapon only in the midst of an emergency. See *United States* v. *Panter*, 688 F.2d 268 (5th Cir. 1982) (bartender, stabbed by a man with a knife, seized a gun while his assailant was on top of him); *People* v. *King, supra* (weapon handed to defendant as intruders attempted to force their way into an apartment). Cf. *Mungin* v. *State*, 458 So. 2d 293 (Fla. Dist. Ct. App. 1984) (a prison inmate may temporarily possess a weapon taken from a would-be aggressor when it is used to defend against the imminent peril of death or serious bodily injury).

We shall assume, without deciding, that, because of reasonable statutory implication (see G. L. c. 140, § 129C [*m*] [1984 ed.]; but see G. L. c. 269, § 12E [1984 ed.]), or because of constitutional or common law principles (see *United States* v. *Bailey*, 444 U.S. 394, 415 n.11 [1980]), unlicensed temporary possession of a firearm in a public place might be lawful in spite of G. L. c. 269, § 10 (*a*), in certain necessitous circumstances. This case, however, does not fall into that category. We are aware of no authority that would support a defense of necessity in circumstances in which a defendant takes possession of a weapon in his own home and carries it into public places, in anticipation of the possibility of a serious encounter with a person who had threatened him at some earlier time. The evidence in this case warranted the conclusion that, once Michel made his armed attack, there was no way the defendant could have avoided the confrontation and that the defendant used his weapon in reasonable apprehension of death or serious bodily injury. The evidence did not, however, raise a reasonable doubt whether the defendant was acting out of necessity at all times when he carried the firearm from his home in Cambridge to the Field's Corner MBTA station and back. The defendant was not responding to an immediate and serious threat throughout that entire period. The judge was not required, therefore, to give an instruction on either necessity of self-defense.

Were we to establish an exception to § 10 (*a*) for an unlicensed person to carry a firearm in public if he reasonably

believed he was likely to be threatened with serious bodily harm, we would significantly undercut the goal of § 10 (*a*). Such an exception would provide a way out which, if believed, would exonerate every unlicensed person who wants to carry a gun. Such a person wants to carry a gun precisely because he fears that at some time he might be threatened with serious bodily injury.

We are not unaware that some may say that the defendant is to be punished for acting reasonably in the face of a serious and real threat. The threat of physical harm was not a general one. It was founded on an earlier assault by Michel with a knife and became a real and direct danger once again when Michel attacked the defendant with a knife at the MBTA station. We are also advised from the record that the defendant is a hardworking family man, without a criminal record, who was respected by his fellow employees (Michel excepted). Michel, on the other hand, appears to have lacked the same redeeming qualities. He was a convicted felon who had serious charges pending against him at the time of trial (quite apart from the charge of assaulting the defendant). It is possible that the defendant is alive today only because he carried the gun that day for protection. Before the days of a one-year mandatory sentence, the special circumstances involving the accused could be reflected reasonably in the sentencing or dispositional aspect of the proceeding. That option is no longer available to the judicial branch of government in a case of this sort. Any relief that the defendant's circumstances may warrant must come from one of the other branches of government.

*Judgment affirmed.*