## COMMONWEALTH *vs.* JAMES GARUTI.

Essex.    October 21, 1986. — February 27, 1987.

Present: DREBEN, CUTTER, & FINE, JJ.

*Assault and Battery. Practice, Criminal,* Instructions to jury. *Duress. Necessity. Self-Defense. Evidence,* Consciousness of guilt, Hearsay, State of mind. *Error,* Harmless.

At the trial of a defendant charged with assault and battery by means of a dangerous weapon arising from an incident in which an automobile driven by the defendant had struck two police officers, there was sufficient evidence to warrant the judge in charging the jury on intentional use of force. [563]

At the trial of a defendant charged with assault and battery by means of a dangerous weapon in which the defendant had requested specific instructions to the jury on duress, self-defense, accident, and necessity, the judge's instructions, including verbatim the instruction on duress as requested by the defendant, and further, that the act "must be proven beyond a reasonable doubt to have been done wilfully and deliberately, and not because of mistake, accident or duress" were more favorable to the defendant than was called for; moreover, in the circumstances, the defendant was not entitled to an additional instruction on self-defense. [563-566]

At the trial of a defendant charged with assault and battery by means of a dangerous weapon arising from an incident in which an automobile driven by the defendant had struck two police officers, the judge erred in excluding certain statements offered by the defendant in explanation of his state of mind in failing to immediately report the incident to the police, a matter that had been put in issue by the prosecutor's attempt to show consciousness of guilt, but the error was nonprejudicial where the testimony of the defendant which was rejected was substantially cumulative of testimony before the jury. [566-569]

INDICTMENT found and returned in the Superior Court Department on October 2, 1985.

The case was tried before *Suzanne V. DelVecchio,* J.

*Brownlow M. Speer,* Committee for Public Counsel Services, for the defendant.

*Robert J. Bender,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. In his appeal from a conviction of assault and battery by means of a dangerous weapon, "to wit: a motor vehicle," the defendant claims (1) that there was insufficient evidence for the judge to charge the jury on intentional use of force; (2) that the defendant's requested instruction on self-defense should have been given; and (3) that striking of certain evidence relevant to the issue of consciousness of guilt was error. We affirm.

We first state the facts which bear on the judge's instructions and defer narration, until later, of the circumstances which relate to the judge's evidentiary ruling. On July 20, 1985, unaware that he was being followed by three plainclothes policemen in an unmarked car, the defendant picked up a prostitute, drove to a secluded spot in Lynn, and parked his car. The policemen parked where they would not be seen and approached the defendant's vehicle on foot.

There are divergent accounts of what happened next. According to the prosecution, two of the officers, McDermott on the left side of the defendant's car and Sirois on the right, shined their flashlights into the vehicle, showed their badges to the occupants, and announced themselves as police. The defendant driver, who was "exposed," looked directly at Sirois and then looked to his left. Although Sirois told the driver not to start the car, the latter reached to turn the key, spun the wheel to the right as far as it would go, and flattened the gas pedal. McKinney, the third officer, who was slightly behind McDermott, saw the driver look at him (McKinney) three times and then spin the steering wheel to the right. The car "shot backwards," striking McDermott and McKinney who were on the left. McKinney was thrown eight to ten feet in the air, fell on the sidewalk and was seriously injured. Sirois saw the car turn full circle and stop. He again identified himself, ordered the defendant to halt, and, in an effort to prevent the defendant from fleeing, struck the windshield several times with his flashlight. The car sped away.

The defendant's version was far different. He testified that while engaged in "sexual acts" with the woman, "[s]omething made [him] look over [his] shoulder." He saw two figures approaching with what appeared to be pipes in their hands. He heard a voice yell — he could not make out what it said — and the windshield "started coming in." He "put the car in reverse and got out of there." He did not look around and was unaware that the car had hit anyone. He was "terrified" and thought the prostitute had perhaps set him up with her pimp.

1. *Intentional use of force.* The defendant argues that while there was sufficient evidence for the judge to charge the jury on assault and battery with a dangerous weapon predicated on wanton or reckless conduct, see *Commonwealth* v. *Welansky,* 316 Mass. 383, 398-401 (1944), there was insufficient evidence to charge on intentional use of force on any officer. See *Commonwealth* v. *Burno,* 396 Mass. 622, 625 (1986), for a discussion of the elements of these separate aspects of the offense of assault and battery.

The claim fails. The testimony of the police officers, recounted above, taken in the light most favorable to the Commonwealth, supports the judge's charge. A jury, under the requisite standard, could find that the defendant, having seen the officers, intentionally hit them in the process of effecting his escape. See *Commonwealth* v. *Burno, supra* at 623, 628.

2. *Self-defense.* At trial, the defendant requested specific instructions on duress, self-defense, accident, and necessity. The instruction on duress offered by the defendant was given verbatim, and the judge instructed that the act "must be proven beyond a reasonable doubt to have been done wilfully and deliberately, and not because of mistake, accident or duress." The defendant claims that he should also have received an instruction on self-defense.

An examination of the elements of duress, *Commonwealth* v. *Robinson,* 382 Mass. 189, 199-200 (1981), necessity, see *Commonwealth* v. *Thurber,* 383 Mass. 328, 330 (1981), and self-defense, see *Commonwealth* v. *Harrington,* 379 Mass. 446, 450 (1980), and the instruction on duress that was given indicate that the defendant was not entitled to an additional instruction on self-defense.

The related concepts of duress, necessity, and self-defense reflect the view that, as a matter of public policy, compulsion or what is sometimes characterized as "a principle of necessity" may afford a justification for conduct which would otherwise constitute an offense. See *Commonwealth* v. *Thurber*, 383 Mass. at 330; *Commonwealth* v. *Lindsey*, 396 Mass. 840, 841 (1986); Model Penal Code and Commentaries § 3.02 comment 1 (1985). The distinctions between the three theories are not always clear. The Supreme Judicial Court noted in *Commonwealth* v. *Thurber*, 383 Mass. at 330, "Necessity is similar to duress, and differences have sometimes been blurred." On another occasion, that court stated, "Although the defendant's requests for instructions relied on a theory of self-defense, the defense of necessity may be a more apt characterization." *Commonwealth* v. *Lindsey*, 396 Mass. at 841 n.2. See also 1 LaFave & Scott, Substantive Criminal Law § 5.4(b), at 631 (1986), where the authors explain the relation between the three theories and suggest that duress and self-defense can both be treated as part of the law of necessity. The differences, as expressed by one court, are:

> "Necessity is the defense one pleads when circumstances force one to perform a criminal act. Duress, or coercion, applies when human beings force one to act. W. Lafave and A. Scott, *Handbook on Criminal Law*, pp. 374-377, 374 n.1, and 381 (1972). Lafave and Scott suggest that self defense is appropriate only for crimes committed against the person in defending oneself.
>
> "Necessity applies to other crimes committed in defending oneself, such as possession of firearms. *Id.* at 391, n.2. . . ."

*United States* v. *Nolan*, 700 F.2d 479, 484 n.1 (9th Cir.), cert. denied, 462 U.S. 1123 (1983). See also *Commonwealth* v. *Lindsey*, 396 Mass. at 841 n.2. A distinction made by some courts and commentators between the actions of human beings (duress) and the forces of nature (necessity) has been rejected by the Model Penal Code. The Code takes the position that

the principle of justification or necessity (stated in § 3.02) applies as well "when the evil apprehended has its source in the action or the threatened action of another person" as when it has its source in "the forces and perils of the physical world." *Id*. § 2.09 comment 2, at 373. This may also be true under Massachusetts law. See *Commonwealth* v. *Robinson,* 382 Mass. at 199; *Commonwealth* v. *Lindsey,* 396 Mass. at 841 & n.2.

The defendant does not claim that he resorted to the intentional use of force against McKinney to avoid harm but, rather, that he acted justifiably in reacting to a perceived attack. Even if the intentional theory of assault and battery proffered by the Commonwealth were to create a factual basis for an instruction on self-defense, a matter of some doubt in view of the defendant's claim, the jury were adequately charged by reason of the following instruction, requested by the defendant and given by the judge:

> "A defendant may not be convicted of a crime for an act which he has committed under duress. Duress is defined as a present, immediate and impending threat of such a nature as to induce a well-founded fear of death or of serious bodily injury if the criminal act is not done. The defendant must have been so positioned to have had no reasonable chance of escape. The Commonwealth bears the burden of proving beyond a reasonable doubt that the defendant, if he committed this act, did not do so under duress. Unless you are satisfied that the Commonwealth has met this burden, your verdict must be not guilty."

This instruction was taken from *Commonwealth* v. *Robinson,* 382 Mass. 189, 199 (1981).[1]

Moreover, if we look at the instructions which would have been appropriate for a charge on self-defense, *Commonwealth*

---

[1] The defendant received a more favorable instruction on duress than he was entitled to because the charge omitted the requirement that "neither [the defendant] nor a person of reasonable firmness could have acted otherwise in the circumstances." *Commonwealth* v. *Robinson* at 200.

v. *Harris,* 376 Mass. 201, 208, 209 (1978); *Commonwealth*
v. *Harrington,* 379 Mass. at 450, and which are set out in the
margin,[2] we see that the defendant received a more favorable
instruction than would have been called for. The instruction
did not include the requirement that the defendant use no more
force than reasonably necessary. See note 2, *supra.*[3] Thus even
if an incorrect label was given to the instruction, the error was
of no consequence. The instructions properly allowed the jury
to consider whether the defendant's actions were justified on
terms at least as favorable as proper instructions on self-de-
fense. See *State* v. *Brown,* 561 S.W.2d 388, 391-392 (Mo.
Ct. App. 1977).

3. *Evidentiary ruling — consciousness of guilt.* The defend-
ant testified that after the incident he dropped the prostitute at
a traffic light near where she had been picked up and then
parked the car at his place of work. There was evidence that
he then met the owner of the car, one William Mellen, who
had entrusted the vehicle to the defendant for repairs. Mellen
was the defendant's best friend. When he encountered the
defendant, Mellen already had had a conversation with police,
who had traced the car to him. On cross-examination, Mellen
testified that when he met the defendant, the latter told him
that he didn't know the people who had hit the car. Mellen
told the defendant that he had killed a policeman. The defendant
went into a panic, and Mellen told the defendant that he had
"better hide . . . the police are out to get you."

---

[2] The defendant is relieved of liability on the basis of self-defense where
he "(1) had reasonable ground to believe and actually did believe that he
was in imminent danger of death or serious bodily harm, from which he
could save himself only by using deadly force, (2) had availed himself of
all proper means to avoid physical combat before resorting to the use of
deadly force, and (3) used no more force than was reasonably necessary in
all the circumstances of the case." *Commonwealth* v. *Harrington, supra* at
450. See *Commonwealth* v. *Harris, supra* at 208.

[3] We note that the requested instructions on self-defense did not contain
an explanation of self-defense. They were patterned after *Commonwealth*
v. *Rodriguez,* 370 Mass. 684, 692 n.10 (1976), and a sentence from *Monize*
v. *Begaso,* 190 Mass. 87, 89 (1906), quoted in *Commonwealth* v. *Kendrick,*
351 Mass. 203, 211 (1966). The judge, if she had instructed on self-defense,
would have had to charge in accordance with the substance of note 2, *supra.*

The incident occurred on a Saturday night. The defendant did not go to the police station until Tuesday morning. On cross-examination, the prosecutor, attempting to show the defendant's consciousness of guilt, questioned the defendant's delay in reporting the windshield incident to the police and, after learning the facts from Mellen, explaining the matter to the police. On redirect, defense counsel attempted to rehabilitate the defendant by having him explain his delay. The judge had previously indicated that she would charge on consciousness of guilt.

The defendant testified that between the incident and Tuesday morning he "was talking with an attorney," that his talks included "when [he] would go to the police station," and that he went to the station with the attorney on Tuesday. Counsel then asked, "Why did you go with him?"

The Commonwealth objected and, at a bench conference, defense counsel indicated he wanted to show that the delay was due to the attorney's schedule and that the delay was because the attorney was unavailable. The judge's ruling and the beginning of further questioning were as follows:

> THE COURT: "As long as he doesn't get into any conversation with [his prior counsel], then I think he can have it. As long as it's not a hearsay problem. If there is a hearsay problem — but if the answer is because [his prior counsel], told me to —"
> DEFENSE COUNSEL: "That's not the single reason and I don't expect that's going to be his answer."
> PROSECUTOR: "I object, your Honor."
> THE COURT: "I'm going to allow that question."
> [End of bench conference.]
>
> Q: "Why sir, did you go to the police station on Tuesday and not on Sunday or Sunday morning?"
> A: "Because William Mellen told me that he — he brought the police officer to where I had met him and they all told him they were going to kill me so I had to get hold of a lawyer. I didn't want to be in the police station alone."

The Commonwealth moved to strike the testimony as unresponsive and hearsay. The motion was allowed, at a bench conference, the judge saying,

> "I think it's hearsay and I don't think it goes to the state of mind of the defendant frankly as far as the reason for going to the police station. He already stated what the reasons were, he went to his attorney and his attorney was unavailable to go with him until Tuesday."

The ruling that the defendant's testimony was inadmissible hearsay was error since it was admissible as "state of mind" testimony. *Commonwealth* v. *Mandeville,* 386 Mass. 393, 400 (1982). Mellen's statements to the defendant, even though made out of court, were offered not for their truth but rather to explain the defendant's state of mind, a matter that had been put in issue by the prosecutor's attempt to show consciousness of guilt.

We must next consider whether the error in this case was "nonprejudicial," as in *Commonwealth* v. *Helfant,* 398 Mass. 214, 223-224 (1986), and *Commonwealth* v. *Nadworny,* 396 Mass. 342, 361-362 (1985), cert. denied, 477 U.S. 904 (1986), or whether it resulted in reversible error, as in *Commonwealth* v. *Goldberg,* 212 Mass. 88, 90, 91 (1912), and *Commonwealth* v. *Papadinis, post* 570 (1987).

This is not a case where no explanation was allowed. See *Commonwealth* v. *Fatalo,* 345 Mass. 85, 86, 88 (1962). The defendant's testimony about his discussion with his lawyer, while not explicit, implied that the lawyer's schedule was the reason for the delay. In addition, the import of the statement which was struck had been given by Mellen, a witness for the prosecution. Cf. *Commonwealth* v. *Britland,* 300 Mass. 492, 496 (1938).[4]

---

[4] *Britland* indicates that evidence of statements favorable to the defendant coming from witnesses for the prosecution is apt to be given more credence than statements from the defendant; here the weight of Mellen's testimony was diluted by the fact that he testified he was the defendant's best friend. On redirect examination he was declared a hostile witness.

Here there was little or no other evidence of consciousness of guilt, and the guilt or innocence of the defendant rested on credibility. We recognize that both counsel raised the question of consciousness of guilt in their final arguments, and the judge charged that the jury might consider such evidence as one of the factors tending to prove the guilt of the defendant. Nevertheless, we conclude that there was no prejudice warranting reversal. As mentioned above, the testimony of the defendant which was struck was substantially cumulative of Mellen's testimony, which was before the jury. In addition, the defendant's counsel in his closing argument forcefully brought forth the defendant's explanation for the delay. Even if the jury could have considered and believed the defendant's reason for his delay, "we can say with fair assurance that a reasonable jury would not have returned a different verdict." *Commonwealth* v. *Helfant,* 398 Mass. at 223.

*Judgment affirmed.*