COMMONWEALTH *vs.* BARBARA E. JANVRIN. No. 97-P-48. February 19, 1998. *Firearms. Receiving Stolen Goods. Necessity. Self-Defense. Practice, Criminal,* Instructions to jury, Disclosure of evidence, Discovery, Judicial discretion.

The defendant was convicted of possession of a firearm without a license in violation of G. L. c. 269, § 10(*a*), unlawful possession of a rifle, shotgun or ammunition without a firearms identification card in violation of G. L. c. 140, § 129C, and receiving stolen property over $250 in violation of G. L. c. 266, § 60. We affirm the convictions on both firearms charges. Although the defendant did not challenge her conviction for receiving stolen property on appeal, we reverse that judgment.

The jury could have found the following facts. The defendant, Barbara Janvrin, was involved in a relationship with a man that somehow soured,[1] and the man's two daughters (daughters), both members of the Latin Queens gang, subsequently became hostile toward her. Early in May, 1995, Janvrin was riding on a bus destined for the Springfield bus terminal, when the daughters approached her and threatened her with a gun.[2] When the bus arrived in Springfield, Janvrin sought help from two employees of Peter Pan bus lines, David Hardaker and Raymond Rivera. Rivera allowed Janvrin to hide under a desk in one of the offices at the terminal.

Prior to this incident, Janvrin had been staying with Edwin Ross, another Peter Pan employee. Shortly thereafter, Ross asked Hardaker if Janvrin could stay with him at his home in Greenfield.[3] Hardaker agreed. On the evening of May 25, 1995, Janvrin was alone in the house and received two telephone calls. She was frightened by the calls, and believed them to be from the daughters. She hurriedly packed some belongings, took a gun and some ammunition from one of the bedrooms, and left the house. She took a bus from Greenfield to Amherst, and stayed with a friend until early the next morning, when she boarded a bus headed for Springfield.

Upon his return home from work on May 25, Hardaker discovered that Janvrin was gone and the gun was missing, and telephoned Greenfield police. After receiving a description of Janvrin and information which indicated that she might be heading for Springfield, Amherst police stopped the bus on which she was riding. Janvrin was apprehended and found to be carrying the stolen gun and ammunition in her handbag.

Initially, we address an issue not raised by either party on appeal:[4] whether the defendant could be convicted of receiving a stolen gun that she, herself,

---

[1]The nature of the relationship is not evident from the record.

[2]Janvrin testified that she frequented the Springfield bus terminal during the spring of 1995.

[3]The record is unclear as to when the defendant began staying with Hardaker.

[4]Although neither party addressed this issue on appeal, the Commonwealth conceded error in a letter subsequently submitted to this court.

stole.[5] It is well established that " 'the guilty receiver of stolen goods cannot [herself] be the thief; nor can the thief be guilty of the crime of receiving stolen goods which [she herself] has stolen.' " *Commonwealth* v. *Dellamano*, 393 Mass. 132, 134 (1984), quoting from *Commonwealth* v. *Haskins*, 128 Mass. 60, 61 (1880). We conclude, therefore, that Janvrin's conviction for receiving stolen property must be set aside. See *Commonwealth* v. *McGovern*, 397 Mass. 863, 867-868 (1986).

We next address the propriety of the jury instructions. The defendant argues that she was entitled to instructions on both necessity and self-defense. The judge refused to give either instruction. There was no error.

The application of the defense of necessity is limited to circumstances in which " '(1) the defendant is faced with a clear and imminent danger, not one which is debatable or speculative; (2) [she] can reasonably expect that [her] action will be effective as the direct cause of abating the danger; (3) there is [no] legal alternative which will be effective in abating the danger; and (4) the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue.' " *Commonwealth* v. *Leno*, 415 Mass. 835, 839 (1993), quoting from *Commonwealth* v. *Schuchardt*, 408 Mass. 347, 349 (1990). The defendant bears "the initial burden of producing evidence sufficient to raise" the defense of necessity. *Commonwealth* v. *Brugmann*, 13 Mass. App. Ct. 373, 379 (1982).

Here, the evidence viewed in the light most favorable to the defendant, see *Commonwealth* v. *Lindsey*, 396 Mass. 840, 842 (1986), was insufficient to raise a reasonable doubt whether the defendant was acting out of necessity from the time she left Hardaker's home with the gun until she was apprehended several hours later. Compare *id.* at 845 (defendant not in imminent danger for entire time when he carried a gun to work in anticipation of encountering a coworker who had previously attacked him with a knife and threatened to "get" him, even where he was actually approached by that individual, wielding a knife, on his way to work). Indeed, the danger the defendant sought to avoid, being attacked by the two women who had previously threatened her, was merely speculative, and the course of action she chose to abate that danger, boarding a bus bound for the precise location at which she was most likely to encounter them, cannot be construed as reasonable. Janvrin conceded on cross-examination that she was not certain whether one of the daughters made the "threatening" calls to the Hardaker house. Moreover, although she testified that "she had no choice" but to go to Springfield, she also acknowledged that she was not forced to do so, and further stated that she waited for several hours in Amherst until she thought it "might be safe" to proceed further. Finally, there was no showing that Janvrin made any attempt to contact police or otherwise avoid a confrontation with the daughters before heading toward Springfield.[6] The defense of necessity was not available to Janvrin in these circumstances. See *Commonwealth* v.

[5]The defendant was also charged with larceny of a firearm in Greenfield, the jurisdiction in which that offense occurred. After the defendant was convicted in the present case, however, a nolle prosequi form was filed on the larceny complaint.

[6]In light of the defendant's failure to satisfy her burden regarding the first three elements of the defense of necessity, we do not consider the question raised by the fourth element of the defense, i.e., whether the Legislature has acted to exclude its operation in these circumstances.

*Lindsey, supra* at 845 (defense not available to defendant who took "possession of a weapon . . . and carrie[d] it into [a public place] in anticipation of the possibility of a serious encounter with [someone] who had threatened him at some earlier time").

The judge's refusal to give an instruction on self-defense was also proper. Because Janvrin never had the opportunity to use the gun against her potential assailants, she was not entitled to such an instruction. See *Commonwealth v. Garuti*, 23 Mass. App. Ct. 561, 564 (1987), citing *United States v. Nolan*, 700 F.2d 479, 481 n.1 (9th Cir.), cert. denied, 462 U.S. 1123 (1983) (" 'self defense is appropriate only for crimes committed against the person in defending oneself. Necessity applies to other crimes committed in defending oneself, such as possession of firearms' "). See also *Commonwealth v. Lindsey, supra* at 841 n.2.

The defendant's final claim of error concerns the admission of a State Police Certificate of Examination and Test Firing, indicating that the gun she took from Hardaker's home was operable.[7] The certificate was received by the Commonwealth approximately four months prior to trial, and yet was produced for the first time at a bench conference during trial.[8] The Commonwealth concedes that the ballistician's certificate should have been disclosed sooner, but argues that the judge nevertheless acted within his discretion in admitting it. Compare *Commonwealth v. Fossa*, 40 Mass. App. Ct. 563, 567 (1996) (no abuse of discretion in requiring defendant to proceed immediately to trial after prosecution's late disclosure of two witnesses). It further maintains that the delay could not have prejudiced the defendant's case.

"When confronted with the Commonwealth's failure to comply with its discovery obligations," a judge is afforded considerable discretion. *Commonwealth v. Fossa*, 40 Mass. App. Ct. at 567. See *Commonwealth v. Baldwin*, 385 Mass. 165, 177 (1982); *Commonwealth v. Hamilton*, 426 Mass. 67, 70 (1997). He "may make a further order for discovery, grant a continuance, or enter such order as he deems just under the circumstances." Mass.R. Crim.P. 14(c)(1), 378 Mass. 880 (1979). A defendant seeking relief as a result of delayed disclosure has the burden of showing that she was prejudiced by the delay. *Commonwealth v. Fossa*, 40 Mass. App. Ct. at 568, quoting from *Commonwealth v. Gagliardi*, 29 Mass. App. Ct. 225, 228 (1990). Here, the defendant has failed to satisfy her burden.

Although defense counsel initially objected to the admission of the ballistician's certificate, she subsequently failed to "make any reasoned argument, assert any particular prejudice, or request any specific relief" from the court. *Commonwealth v. Fossa, supra* at 569. Moreover, nothing in the record indicates that had she received the certificate earlier, the defendant would "have been able to prepare and present [her] case in such a manner as to create a reasonable doubt that would not otherwise have existed." *Commonwealth v. Cronk*, 396 Mass. 194, 200 (1985).

---

[7]In order to constitute a "firearm" within the meaning of G. L. c. 269, § 10(*a*), the instrument in question must be capable of discharging a shot or bullet. *Commonwealth v. Raedy*, 24 Mass. App. Ct. 648, 652-653 (1987).

[8]The certificate was not specifically mentioned in any of the pretrial conference reports. Two of the reports expressly provided that discovery was complete. Each of the reports, however, was completed prior to the date of the report, and nothing in the record indicates that the prosecution's failure to produce the certificate earlier was intentional.

Janvrin argues that if she had been aware of the certificate's existence prior to trial, she might have filed a motion to suppress, or called the trooper who conducted the test firing as a witness. She fails to explain, however, what either course of action would have added to her defense. The defendant never challenged the gun's operability. Rather, the defense theory throughout trial was that Janvrin acted out of necessity when she took the gun from Hardaker's home in anticipation of a confrontation with the daughters. Moreover, nothing in the record indicates that the gun was incapable of discharging a bullet, or that the opportunity to examine the trooper who conducted the test firing would have yielded exculpatory information.[9] In these circumstances, the defendant's claim of prejudice is merely speculative, and her challenge to the admission of the certificate must, therefore, fail. See *Commonwealth* v. *Gagliardi*, 29 Mass. App. Ct. at 228; *Commonwealth* v. *Fossa*, 40 Mass. App. Ct. at 570.

The judgment on the charge of receiving stolen property is reversed and the verdict is set aside. The judgments are affirmed in all other respects.

*So ordered.*

*Seth H. Hochbaum* for the defendant.

*Cynthia M. Pepyne*, Assistant District Attorney, for the Commonwealth.

---

[9]Indeed, Brett Hardaker, the gun's owner, testified that he had previously fired the gun and that as far as he knew, it was in "working order."