COMMONWEALTH *vs.* BEN B., a juvenile.[1] No. 02-P-747. September 26, 2003. *Firearms. Delinquent Child. Necessity.*

Ben B., a juvenile, was adjudicated delinquent by a jury of unlawful possession of a firearm (G. L. c. 269, § 10[*a*]), and shoplifting (G. L. c. 266, § 30A). The Juvenile Court judge who presided over the trial declined to give a defense of necessity instruction in connection with the gun charge. That refusal is the sole ground of appeal.[2] We affirm.

1. *Facts.* The juvenile embarked with his sister, Monique, on a shopping errand to Filene's department store in downtown Boston in the early afternoon of September 29, 2000. They were accompanied by Jarius Henley, Monique's friend. Monique was pushing a baby stroller with her one year old child in it. She also had her two year old and her three year old in tow. Henley had tucked a .380 Davies handgun, loaded with a five-round clip, into the waist band of loose fitting trousers. As the party was at the threshold of Filene's, the gun began to slide down inside Henley's trouser leg. He lifted his leg and let the weapon slide into the stroller. Monique said that it was not a good idea for the gun to be in the baby stroller. The juvenile, who was fifteen years old at the time, accommodatingly picked the gun out of the stroller and put it in his back pocket. Henley said he would take the weapon back after they left Filene's.

Inside Filene's, the object of the shopping errand — to buy a hat and gloves for a child — changed to shoplifting jewelry. As the juvenile and his sister helped themselves to rings and earrings, a store camera system had them under surveillance. Security personnel descended on them, escorted them to an "apprehension office," and conducted pat and frisk searches. They found the stolen merchandise, and in the case of the juvenile, they also found the gun.

2. *The necessity defense.* The theory of the defense is that imminent danger to the children and others from proximity of the children to the handgun necessitated the juvenile's removal of the weapon from the baby stroller. Three essentials describe the limited circumstances under which a defendant may invoke the necessity defense: "(1) the defendant is faced with a clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his action will be effective as the direct cause of abating the danger; [and] (3) there is no legal alternative which will be effective in abating the danger." *Commonwealth* v. *Brugmann*, 13 Mass. App. Ct. 373, 379 (1982). That standard has been frequently restated. See, e.g., *Com-*

---

[1]A pseudonym.

[2]There is no appeal from the finding of delinquency for shoplifting.

*monwealth* v. *Hood*, 389 Mass. 581, 591 (1983); *Commonwealth* v. *Leno*, 415 Mass. 835, 839 (1993); *Commonwealth* v. *Pike*, 428 Mass. 393, 400 (1998); *Commonwealth* v. *O'Kane*, 53 Mass. App. Ct. 466, 470 (2001). The danger may affect the defendant or, as here, a third person. *Ibid.* In determining whether a case requires a necessity instruction, a judge views the evidence in the light most favorable to the defendant. *Commonwealth* v. *Lindsey*, 396 Mass. 840, 842 (1986).

So, for example, an ambulance driver racing to the hospital with a critically ill patient may exceed the speed limit or a defendant may "seize[] a firearm from one who had expressed an immediate intention to use it, and flees [with the weapon] to a place of safe-keeping." *Commonwealth* v. *Weaver*, 400 Mass. 612, 615 (1987). *Commonwealth* v. *Iglesia*, 403 Mass. 132, 133 (1988) (defendant testified that he wrested gun from assailant and went directly to police station to turn in gun). An instruction on the defense of necessity was required when the defendant, charged with unlawful possession, had grabbed a handgun to ward off a man who was pointing a gun at him. *Commonwealth* v. *McCambridge*, 44 Mass. App. Ct. 285, 291-292 (1998). There the danger was imminent, and an attempt by the defendant to fend off the assailant with his bare hands was not likely to be effective. *Ibid.*

In the case at bar, the evidence was inconclusive as to where the handgun lay in the stroller. If it had lodged in a cargo-carrying compartment in back of the stroller seat, the one year old in the stroller would not have been able to reach the gun. As to the two older children, Henley, who was their father, could have handled the situation by keeping them at a distance from the stroller. Thus, the evidence of imminent danger was incomplete. See *Commonwealth* v. *Foster*, 48 Mass. App. Ct. 671, 678-679 (2000). Assuming for the sake of the discussion that if the firearm were in the seat next to the one year old, there was danger of some imminence, the next question is whether there was no legal alternative to averting the danger. Here the juvenile's case for a necessity instruction collapses. The juvenile could have removed the weapon and sought out the nearest police officer outside the store or a security officer inside the store to surrender the weapon. This may be asking rather much of a fifteen year old boy. Gun control legislation in Massachusetts, however, "shows an unwavering legislative intent that one may lawfully carry a firearm only if he has a license or qualifies for a specific statutory authorization." *Commonwealth* v. *Lindsey*, 396 Mass. at 842. The courts have not treated the prohibition of G. L. c. 269, § 10, with flexibility. *Id.* at 842-843. Even if the juvenile (rather than his adult sister and her friend) could have, as matter of necessity, removed the gun from the stroller — and we do not so hold — he was not entitled to walk around with it on his person for fifteen minutes in a public place. See *id.* at 845.

The judge was right in declining to instruct the jury on the defense of necessity.

*Adjudication of delinquency affirmed.*

*James P. Bardsley* for the juvenile.

*Donna Jalbert Patalano*, Assistant District Attorney, for the Commonwealth.