## COMMONWEALTH *VS.* DELANO LIVINGTON.[1]

No. 07-P-40.

Suffolk. October 10, 2007. - November 29, 2007.

Present: CYPHER, DREBEN, & COHEN, JJ.

*Motor Vehicle,* Operating to endanger. *Practice, Criminal,* Instructions to jury, Assistance of counsel. *Necessity.*

Evidence at the trial of a charge of reckless operation of a motor vehicle was sufficient to convict the defendant of that crime, where police testimony that the defendant was driving on the wrong side of the road properly permitted an inference that the defendant was driving in the oncoming lane of traffic. [748]

At the trial of a charge of reckless operation of a motor vehicle, the defendant's counsel was ineffective in failing to request a jury instruction on the defense of necessity, a defense fairly raised by evidence that the risk of harm posed by a gunshot to the defendant's abdomen outweighed the harm posed by his having briefly driven on the wrong side of the road to reach a location where he could obtain assistance. [748-751]

COMPLAINT received and sworn to in the West Roxbury Division of the Boston Municipal Court Department on March 16, 2005.

The case was tried before *Kathleen E. Coffey,* J.

*Brandon L. Campbell* for the defendant.

*Margaret O. Waymel* (*Macy Lee,* Assistant District Attorney, with her) for the Commonwealth.

CYPHER, J. A District Court jury convicted the defendant of reckless operation of a motor vehicle and acquitted him of carrying a firearm without a license and possession of ammunition without a license.[2] On appeal, the defendant claims that (1) the

---

[1]We adopt the spelling of the defendant's name as it appears in the criminal complaint.

[2]The complaint on which the defendant was tried also indicated that he was

evidence was insufficient to demonstrate that his operation of the motor vehicle was reckless; and (2) his lawyer was ineffective for failing to request a jury instruction on the defense of necessity.

*Facts.* The jury could have found the following facts. On March 15, 2005, the defendant offered to give Renaldo Cox a ride to his math class that started at 8:00 P.M.[3] The defendant was driving a red Ford Explorer sport utility vehicle. The defendant picked up two more friends, Jose Mow and Carlos Moore, and because it was still early, the foursome drove to the Archdale Community Center to see if they could reserve a basketball court to use after the defendant dropped Cox off at his class. The community center is located in the Archdale housing development in the Roslindale area of Boston. They arrived at the community center at about 7:30 P.M. The defendant and Mow, who was sitting directly behind the defendant in the rear passenger seat, got out of the vehicle and went around the corner of the community center. Cox remained in the front passenger seat, and Moore stayed in the rear passenger seat directly behind him.

After about two or three minutes, Cox heard gun shots and saw the defendant and Mow run back to the vehicle. When the defendant opened the door to get in, Cox testified, "a gun landed in my lap" and "I tossed it in the back." Although the defendant had a gunshot wound to the stomach, he got into the driver's seat and tried to drive himself to the hospital. The defendant drove for about thirty seconds on Washington Street in Roslindale and then pulled into the Emporium gasoline station and stopped. He opened the driver's side door and fell out.

Officer Kenneth Reid saw the defendant drive by him on Washington Street between 7:45 P.M. and 8:00 P.M. Reid was working undercover on Washington Street and was in a parked, unmarked Chevrolet Trailblazer when the defendant passed his

cited civilly for committing a marked lanes violation and a passing violation. At the conclusion of the trial, the judge found the defendant responsible for each infraction and placed the citations on file.

[3]Cox was also charged with illegal possession of ammunition as the result of his participation in the incident. At the time of his testimony in this case, Cox had pleaded guilty and was awaiting sentencing. In exchange for his testimony, the Commonwealth agreed to recommend that the guilty finding be changed to a continuation without a finding and to recommend a lighter sentence.

location. The defendant's vehicle caught his attention because it "was traveling on the wrong side of the street on Washington Street . . . at a high rate of speed and passing cars on the right." When pressed to explain what he meant by the "wrong side of the street," he explained that he meant the "left hand side of the street, and usually you travel on the right hand side." Reid saw the vehicle stop in the gasoline station and the driver "stumble out on to the pavement."

When the defendant fell out of the vehicle, Cox got out and walked to the driver's side to try to help him. At about the same time, Reid and two other officers got out of the Trailblazer, displayed their badges and firearms, and yelled, "Boston police — Stop." Cox got into the driver's seat of the Explorer and drove away because he saw two men running toward them with guns drawn and did not know that they were police officers.[4]

The defense called one witness — Mow. Mow testified that when they arrived at the Archdale Community Center, he got out of the Explorer and went alone to the gym. Mow had made arrangements to meet a friend there, but when he could not find him, he turned around and went back to the Explorer. Mow was nervous and did not feel safe without his friend because neither he, nor anyone with whom he had arrived, lived in the Archdale housing development or knew anyone who did. As he started to walk back to the Explorer, there was a "commotion outside, like there was all kind of people around," and he saw the defendant walking toward him "to make sure that everything was all right with [him]." As they walked together to the Explorer, "the shooting started to happen, and [the defendant] accidentally got hit."

According to Mow, "the two dudes that were shooting they ran off in the same direction towards us, towards the [Explorer]." When Mow and the defendant got to the Explorer, Moore was outside smoking a cigarette, and Cox was still inside. The defendant got into the driver's seat, and Mow got into the backseat. As the defendant drove the car, he kept repeating, "I am shot, I got

---

[4]Cox was stopped shortly thereafter, and a search of the Explorer turned up a handgun under the right rear passenger seat. The gun had eight rounds of live ammunition in it. Cox, Mow, and Moore were arrested and taken to the police station.

to get to the hospital." Mow did not have a driver's license, nor did he know how to drive. Mow did not notice anything unusual about the defendant's condition while he was driving.

1. *Sufficiency of the evidence.* The defendant argues that the police testimony that he was driving on the "wrong" side of the road "cannot substitute for hard evidence that [the defendant] violated traffic laws or was driving in a hazardous manner." The testimony properly permits an inference that he was driving in the oncoming lane of traffic. Such conduct is sufficient to sustain his conviction for reckless driving. See *Commonwealth* v. *Horsfall,* 213 Mass. 232, 235 (1913); *Commonwealth* v. *Constantino,* 443 Mass. 521, 526-527 (2005).

2. *Necessity defense.* The defendant argues that his trial counsel was ineffective for failing to request a necessity instruction on the basis that "he was fleeing mortal danger and attempting to reach the hospital for treatment of a life threatening injury." "The occasions when a court can resolve an ineffective assistance claim on direct appeal are exceptional, and our case law strongly disfavors raising ineffective assistance claims on direct appeal." *Commonwealth* v. *Zinser,* 446 Mass. 807, 809 n.2 (2006). The claim may nevertheless be resolved on direct appeal when "the factual basis of the [ineffective assistance] claim appears indisputably on the trial record." *Commonwealth* v. *Diaz,* 448 Mass. 286, 289 (2007), quoting from *Commonwealth* v. *Zinser,* 446 Mass. at 811.

The defense of necessity in the common law provides that "a crime committed under the pressure of imminent danger may be excused if the harm sought to be avoided far exceeds the harm resulting from the crime committed." *Commonwealth* v. *Schuchardt,* 408 Mass. 347, 349 (1990).[5],[6] The defense is limited to "the following circumstances: (1) the defendant is faced with a

---

[5]See *Commonwealth* v. *Pike,* 428 Mass. 393, 400 (1998); *Commonwealth* v. *Brugmann,* 13 Mass. App. Ct. 373, 379 (1982).

[6]Although some appellate cases have not explicitly weighed the competing harms at issue in assessing whether a defense of necessity has been raised, see *Commonwealth* v. *O'Kane,* 53 Mass. App. Ct. 466, 469-470 (2001); *Commonwealth* v. *Ben B.,* 59 Mass. App. Ct. 919, 919-920 (2003), this principle is clearly a component of the decisional law and is a factor that should be considered in any determination whether the evidence sufficiently raises the defense. See *Commonwealth* v. *Schuchardt,* 408 Mass. at 349; *Commonwealth*

clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his [or her] action will be effective as the direct cause of abating the danger; [and] (3) there is [no] legal alternative which will be effective in abating the danger."[7] *Commonwealth* v. *Hood*, 389 Mass. 581, 591 (1983), quoting from *Commonwealth* v. *Brugmann*, 13 Mass. App. Ct. 373, 379 (1982). Only where "there is evidence that would warrant a reasonable doubt whether [the defendant's actions were] justified as a choice between evils" is the defendant entitled to an instruction. *Commonwealth* v. *Leno*, 415 Mass. 835, 839 (1993), quoting from *Commonwealth* v. *Schuchardt*, 408 Mass. at 349. "If the question is properly raised, the Commonwealth then has the burden to prove the absence of justification beyond a reasonable doubt." *Commonwealth* v. *Brugmann*, 13 Mass. App. Ct. at 379.

Here, there is little dispute that the evidence was sufficient to establish the first requirement, that the defendant faced imminent danger as he fled from the gunman who shot him in the abdomen. The second element requires proof that the defendant reasonably expects that his action will be effective as the direct cause of abating the danger. Where the evidence shows that the defendant drove away quickly to obtain medical help, it is readily inferable that his actions abated the immediate risk of being shot again while simultaneously seeking medical help for his wound.

Third, the evidence must suggest that there was no available legal alternative. The evidence shows that the defendant drove about one-quarter mile on Washington Street, for a period of about thirty seconds, and that at some point in this short trip, he exceeded the speed limit while in the oncoming lane. There was testimony that the defendant had to pass several cars on his right, but there was no evidence that there were any cars in the oncoming lane of traffic. In these circumstances, we conclude there was sufficient evidence produced to raise a "reasonable doubt whether

v. *Hutchins*, 410 Mass. 726, 730-731 (1991); *Commonwealth* v. *Pike*, 428 Mass. at 400.

[7]A fourth requirement was set forth in *Commonwealth* v. *Brugmann*, 13 Mass. App. Ct. at 379, but needs no discussion here: "the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue."

[the defendant's actions were] justified as a choice between evils."
*Commonwealth* v. *Leno*, 415 Mass. at 839.

Here, the risk of harm posed by the gunshot wound to
defendant's abdomen outweighed the harm posed by his having
briefly driven on the wrong side of the road to reach a location
where he could obtain assistance. See *Tarvestad* v. *State*, 261
Ga. 605, 606 (1991) (necessity defense properly raised where
defendant drove without license in order to bring his pregnant
wife, who was having early labor pains, to doctor); *State* v.
*Cole*, 304 S.C. 47, 48-50 (1991) (error for judge to refuse to
charge jury on defense of necessity where defendant drove with
suspended license in order to get to telephone to call for help
for his wife who was six months pregnant and experiencing
significant pain). See also *Commonwealth* v. *Weaver*, 400 Mass.
612, 615 (1987) (necessity defense appropriate when defendant
"seizes a firearm from one who had expressed an immediate
intention to use it, and flees [with the weapon] to a place of
safe-keeping"); *Commonwealth* v. *Iglesia*, 403 Mass. 132, 133-
134 (1988) (evidence that defendant wrested gun from assailant
and went directly to police station to turn it in was sufficient to
raise necessity defense).

We conclude in this case that the defense of necessity was
fairly raised by the evidence and that the instruction should
have been given. Because we can discern no basis for trial
counsel's failure to request the instruction, we conclude that
counsel was ineffective, and that "better work might have ac-
complished something material for the defence."[8] *Commonwealth*
v. *Satterfield*, 373 Mass. 109, 115 (1977). To the extent the
defendant also argues that the judge's failure to instruct the
jury, sua sponte, on the defense of necessity created a substantial
risk of a miscarriage of justice, the outcome is unchanged;
whether the issue is viewed in terms of counsel's ineffective-
ness or whether the judge's failure created a substantial risk of
a miscarriage of justice, the standards are essentially the same.
See *Commonwealth* v. *Azar*, 435 Mass. 675, 685 (2002). See
also *Commonwealth* v. *Galvin*, 56 Mass. App. Ct. 698, 701
(2002) (judge's failure to instruct on self-defense, sua sponte,
even absent request from defense counsel, created substantial

---

[8]The defendant's appellate counsel is not the same as his trial counsel.

risk of miscarriage of justice where there was evidentiary basis for instruction).

*Judgment reversed.*

*Verdict set aside.*