NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-40

COMMONWEALTH

vs.

STACEY VANCIA HARRIETTE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the Boston Municipal Court, the defendant, Stacey Vancia Harriette, was convicted of reckless operation of a motor vehicle, in violation of G. L. c. 90, § 24 (2) (a), and failing to stop for police, in violation of G. L. c. 90, § 25. On appeal, the defendant argues that trial counsel was ineffective for failing to request a jury instruction on a necessity defense. We affirm.

Background. We recite the facts in the light most favorable to the defendant to determine whether she was entitled to a jury instruction on the necessity defense. See Commonwealth v. Pike, 428 Mass. 393, 396 (1998). The defendant testified in her own defense.

On January 21, 2023, at approximately 7 P.M., the defendant returned to her home in Boston to the sound of gunshots and the sight of her husband getting hit by a stolen Hyundai occupied by two people. The Hyundai also hit the defendant's vehicle, though it did "[n]ot really" damage it, and then drove off. After the defendant's husband was hit by the Hyundai, he pursued the Hyundai in his Jaguar with their sixteen year old son in the car. The defendant followed and called the police. The defendant was pursuing the vehicles to "make sure [her] son was okay." She used a global position system (GPS) tracker that she had on the son to guide her to his location.

Meanwhile, Boston police Officer Lea Allen was responding to a report of shots fired on Garfield Avenue in the Hyde Park section of Boston when she received a separate call concerning two vehicles racing on Hyde Park Avenue. She was driving a marked cruiser. Allen saw a silver Jaguar sedan chasing a dark Hyundai sedan that was traveling without headlights, despite the nighttime conditions. Both vehicles were traveling toward Cleary Square, a commercial and residential area in Hyde Park, at a high rate of speed, running red lights, and narrowly avoiding multiple collisions.

As Allen pursued the two vehicles, she noticed a black Mercedes, which was later determined to be operated by the

2

defendant, following her cruiser.  Because the defendant was closely following Allen's cruiser, Allen braked, and the defendant pulled alongside the cruiser's passenger side.  Allen rolled down her window and spoke with the defendant, whose teenage daughter was seated in the front passenger seat.  The defendant told Allen that her husband and son were in the Jaguar and that two people who had been harassing her son were in the Hyundai, which the defendant believed to be stolen.  The defendant asked whether Allen was pursuing the vehicles, to which Allen responded that she was.

As the defendant and Allen were talking, the Jaguar and Hyundai passed them going the opposite direction on Hyde Park Avenue.  The defendant pointed them out to Allen, made a U-turn, and again began pursuing them.  Allen followed the defendant as the defendant chased the two vehicles at a "fast speed," but not "too much over the speed limit."[1]  During that stretch, the defendant drove through several traffic lights that, in the defendant's words, "may have been green" and some "may have been red."  The defendant continued to follow the Hyundai and Jaguar despite seeing Allen's cruiser lights activated.[2]

_____

[1] The speed limit on the road was thirty miles per hour.

[2] The defendant was not sure if the cruiser sirens were on.

3

After briefly losing sight of the defendant in traffic, Allen saw the defendant standing outside her Mercedes, which was parked diagonally in the middle of the intersection of Harvard Avenue and Hyde Park Avenue, waving Allen toward her. Allen stopped, and the defendant told her that the Jaguar and Hyundai had crashed on River Street. The defendant then returned to her vehicle and drove toward River Street, with Allen following.

When Allen arrived at River Street, she noticed that the Hyundai had collided with a large, white pickup truck, and the Jaguar was blocking the Hyundai's path. The defendant also was present.

At trial, the defendant argued that she had "no choice" but to follow the vehicles. Trial counsel did not request a jury instruction on the necessity defense.

Discussion. On appeal, the defendant argues that her trial counsel was ineffective for failing to request a jury instruction on the necessity defense. We disagree.

"[O]ur case law strongly disfavors raising ineffective assistance claims on direct appeal." Commonwealth v. Zinser, 446 Mass. 807, 809 n.2 (2006). We may nevertheless resolve ineffective assistance claims where "the factual basis of the . . . claim appears indisputably on the trial record."

4

Commonwealth v. Diaz, 448 Mass. 286, 289 (2007), quoting Zinser, supra at 811.

> "To prevail on a claim of ineffective assistance of counsel, the defendant must show, first, that there has been serious incompetency, inefficiency, or inattention of counsel . . . falling measurably below that which might be expected from an ordinary fallible lawyer and, second, that counsel's conduct has likely deprived the defendant of an otherwise available, substantial ground of defence" (quotations and citation omitted).

Commonwealth v. Rogers, 494 Mass. 629, 639 (2024). Where the defendant is not entitled to an instruction, "it follows that, by failing to request it . . . counsel did not provide ineffective assistance." Commonwealth v. DeMarco, 444 Mass. 678, 685 (2005).

The necessity defense is available if the "harm sought to be avoided far exceeds the harm resulting from the crime committed." Commonwealth v. Schuchardt, 408 Mass. 347, 349 (1990), quoting Commonwealth v. Hood, 389 Mass. 581, 590 (1983). The defense requires evidence that

> "(1) the defendant is faced with a clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his action will be effective as the direct cause of abating the danger; (3) there is [no] legal alternative which will be effective in abating the danger; and (4) the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue."

Hood, supra at 591, quoting Commonwealth v. Brugmann, 13 Mass. App. Ct. 373, 379 (1982). "A judge should instruct the jury on

5

necessity only if the defendant has presented 'some evidence on each element of the defense.'" Pike, 428 Mass. at 400, quoting Hood, supra at 595.

Here, when viewed in the light most favorable to the defendant, the evidence did not warrant a necessity instruction. The defendant could not have reasonably expected to abate the danger posed by the fleeing vehicles. Contrast Commonwealth v. Livington, 70 Mass. App. Ct. 745, 749 (2007) (quickly driving away to seek medical help after being shot "abated the immediate risk of being shot again"). Rather, by speeding through red lights and engaging in a prolonged high-speed chase on busy public streets, particularly while the police also were in pursuit, the defendant compounded the risk of harm to the fleeing vehicles, the police, and the public.

Moreover, the record demonstrates that multiple lawful alternatives existed. In fact, the defendant pursued one such alternative: calling the police. The defendant also could have pulled over when directed by Allen and provided information regarding the vehicles' location, including any GPS tracking available to her. She also could have remained in contact with police by phone and relayed updates without pursuing the fleeing cars herself. Given the availability of these alternatives that did not involve a violation of the law, the defendant was not

6

justified in committing reckless operation.  See Pike, 428 Mass. at 401.

Accordingly, where the defendant did not provide evidence on every element of the necessity defense, trial counsel was not ineffective for not requesting an instruction on the necessity defense.  See DeMarco, 444 Mass. at 685.

Judgments affirmed.

By the Court (Henry, Hand & Allen, JJ.[3]),

Clerk

Entered:  June 29, 2026.

---

[3] The panelists are listed in order of seniority.